## CUNNINGHAM'S ADM'R v. ROGERS.

1. A mortgagee of slaves, with a power of sale to pay a debt due him, sold under the mortgage, and became himself the purchaser, and afterwards re-sold them at a profit: Held, that he was a trustee in the re-sale, for the mortgagor, who was entitled to the difference, between the first and second sale.

2. A supplemental bill, when properly filed, is to be considered as part of the original bill, and if upon the whole bill the complainant is entitled to relief, it must be decreed him.

Writ of Errror to the 16th Chancery District. Before the Hon. D. G. Ligon.

WILLIAM ROGERS, the complainant, executed to Joseph L. Cunningham a deed of mortgage of certain slaves, on the 15th day of May, 1841, to secure the payment of a promissory note for $3,620, and by the terms of the mortgage, Cunningham had the right to sell the slaves, or so many thereof as were necessary to pay said note, on giving ten days' notice.

Before the note fell due, Cunningham advertised the sale, and Rodgers filed his bill to enjoin the sale, alledging, amongst other things, payment of $900 in the sale of a slave, and also that Cunningham was indebted to him for one half of the proceeds of a crop raised by them jointly. Upon the coming in of the answer, the injunction was dissolved.

A supplemental bill was afterwards filed, alledging that Cunningham, after the dissolution of the injunction, exposed the slaves to public sale, and became himself the purchaser of them for $1,800, and that in a short time thereafter, he re-sold them for $3,300, and prays that the re-sale be considered as the actual sale, and that the defendant be decreed to account for that sum.

The answer insists, that the purchase by Cunningham was fair, and for the best price that could be got, and that he was not bound to account for the sum received by him on the re-sale, but should be held accountable only for $1,800; and admits that he received, in notes on third persons, when he parted with the possession, $2,800. There was a conflict of proof as to the value of the slaves.

The chancellor decreed that Cunningham should account for the value of the slaves, and referred it to the master to ascertain the value, who reported the value to be the amount admitted to have been received by Cunningham, to wit, $2,800, and found a balance due from the respondent to the complainant. The respondent having died, the suit was revived against his representatives, and a final decree for $638 59, was rendered in favor of complainant, which is now assigned as error.

McLESTER, for plaintiff in error.

1. The plaintiff in error was both trustee and *cestui que*

*trust;* he had an interest, which he had a right to protect by entering into fair competition with other bidders for the property he sold under the deed. Brannan v. Oliver, 2 Stew. 47; Saltmarsh v. Beene, 4 Port. 283; 6 Ala. R. 894.

2. The *gravamen* of the original bill is, that the complainant have an account of a partnership crop, and a postponement of the sale till the law day, and that he be allowed his proper credits. The proof shows the account had been settled *to the satisfaction of the* parties, *by an award of* arbitrators chosen by them for that purpose. That the proper credits had been allowed by the defendant before the exhibition of the bill, and that there was no abuse of the trust by the plaintiff in error. So the original is wholly unproved, and should have been dismissed.

3. The supplemental bill should have been an original bill. The plaintiff in error's right to sell under the deed is not denied, but fully admitted in the bill. But it is alledged that Cunningham publicly threw doubts over the title at the sale of the slaves, by intimating they were involved in law, and purchased them at $1,800, and afterwards sold them at $3,300. Story's Eq. Plead. 273, § 336, 337, 339, and cases there cited.

DARGAN, J.—The rule is settled on principles which we approve, that a trustee cannot, by buying the trust estate, make profit to himself. See 1 Story's Eq. 317, and the cases there cited. Indeed, the authorities go to the extent, that when a trustee becomes the purchaser at his own sale, the *cestui que trust* may still look upon the property as bound by the trust, and may apply, within a reasonable time, to have a re-sale, without showing any injury to his rights, or benefit to the trustee. That is, he may treat the purchase of his trustee, as a sale, or not, at his option. See 5 Vesey, 678; 1 Story's Eq. 318; 2 Johns. Chan. Rep. 252; Saltmarsh v. Beene, 4 Porter's Rep. 283. And where the trustee is shown to have made profits by a re-sale of the trust property, in a short time after his purchase, and without delay the *cestui que trust* applies to have the benefit of the re-sale, the rule is invariable, that the purchase by the trustee will be set aside, and the *cestui que trust* will be entitled to the benefit of the

re-sale. See 1 Story's Equity, 317, and the cases there referred to.

It is true, that in the case of Brannan v. Oliver, 2 Stewart, 47, this court held, that a purchase by an administrator having an interest at his own sale, would be supported, if no unfairness appear; and in 6 Ala. 896, it is said, that an administrator, at his own sale, may purchase, if it be fairly conducted, and it cannot be treated as a nullity. But these authorities fall short of the facts of this case. Here, the respondent was a trustee to sell property to pay a debt due from complainant to the respondent. The respondent, the trustee, became the purchaser at his own sale, and in a short time thereafter re-sold the property, at the profit of $1,000. These facts, within themselves, must set aside the purchase of the trustee at his own sale; he must be held to be a trustee at the time of the re-sale, and the complainant entitled to the benefit of it, and hence there is no error in estimating the value of the negroes at $2,800, for the answer shows this is the amount received by the defendant on the re-sale.

2. It is said, however, that the original bill, without the aid of the supplemental bill, would have been dismissed at the final hearing, and that the decree is erroneous, because it can be sustained on the supplemental matter only? The rule is, that a supplemental bill, when properly before the court, may be considered as part of the original bill, and the whole is to be considered as one bill; and hence, if the complainant is entitled to relief upon his whole bill, it should be decreed to him. See 13 Conn. R. 456; Dan. Ch. Prac. 1654.

There is no objection, that the supplemental matter is not properly before the court, and it must be treated as part of the bill; and thus considered, the bill has equity, and the answer shows the measure of relief that should be granted, independent of the testimony taken by depositions.

The decree of the chancellor is affirmed.

CHILTON, J., not sitting.