TOWN OF BRISTOL *vs.* BRISTOL & WARREN WATER WORKS.

PROVIDENCE—MAY 12, 1903.

PRESENT: Stiness, C. J., Tillinghast and Douglas, JJ.

(1)  *Amendments to Bill in Equity.*

Amendments to a bill in equity which contain contradictory assertions and prayers for relief to those stated in the original bill are not permissible, especially after the prayer of the bill has been granted and proceedings have been ordered by a consent decree and are actually in progress.

(2)  *Bill of Review.*

A bill in the nature of a bill of review which seeks to set aside a consent decree is not permissible.

(3)  *Municipal Corporations.    Water  Works.    Franchises.    Forfeiture. Equitable Ownership after Contract to Sell.*

By the contract between a town and a corporation, the former had the right to purchase the water works of the latter, which had an exclusive right in the streets of the town for the term of fifty years:—

*Held,* that, as the town elected to buy the water works before the suit between the parties commenced, the equitable ownership of the franchise passed to it and could not be forfeited by any subsequent neglect or act of the corporation.

*Held,* further, that, after such vote to purchase, the corporation was running the works as the trustee of the town, and, on final settlement, must account to the town for all profits.

(4)  *Equity.    Masters in Chancery.    Evidence.*

On a reference to a master upon the question of the value of the property, the master can hear any evidence on that subject, whether known to the parties at the time of the filing of the bill or discovered since.

(5)  *Municipal Corporations.    Water  Works.    Duty to Repair and Keep Works in Condition after Agreement to Sell.*

By a contract between a town and a corporation owning the water works, the parties were bound to an absolute sale of the plant to the town; but the property to be delivered was undetermined, and a bill was brought by the town to compel the company to convey.  The latter admitted its obligation, and by consent the cause was referred to a master to determine the question, preliminary to delivery of and payment for the property:—

*Held,* that, pending the settlement, it was the duty of the company to take such care of the property as a prudent man would take of his own, but not to provide against deterioration caused by time and natural wear, or to make improvements or additions thereto.

*Held,* further, that, while it was the duty of the company to repair a leak in the dam by which salt water was mixing with the stored water, it was not compelled to establish filters which had never existed, or to acquire the right to fence out cattle, or to deepen the reservoirs, so long as they were of sufficient capacity to contain the requisite supply of water.

*Held,* further, that, if special and extraordinary expenses were required to be made in the interests of the consumers, and the parties could not agree thereon, the court would give directions for its preservation and even for necessary extensions and improvements and how the same should be paid for.

*Held,* further, that, after ascertaining what property was to pass to the town and the value of that property when the town voted to purchase, any depreciation caused by the company's fault or neglect could be deducted from the fixed valuation at the time of the purchase.

BILL IN EQUITY.   Heard on motions to amend bill, to re-argue, and to stay proceedings before master.   See also 19 R. I. 413, and 23 R. I. 274.   Motions denied.

DOUGLAS, J.   This case, which has been referred to a master for the determination of certain questions, is now sought to be brought into court upon three motions made by the complainant.

It asks, first, to be allowed to amend its bill.

Secondly, to re-argue the case either before or after amendment.

Thirdly, to stay proceedings before the master.

To understand the application of these motions, it is necessary to glance at the travel of the case hitherto.

The bill was filed August 17, 1895, and alleges, amongst other things, that the town of Bristol, on May 4, 1895, voted to purchase the defendant's water-works system and other property rights and appurtenances connected, used, or belonging therewith, and complained that the defendant refused to sell, and prayed that it might be compelled to do so, and that the court would ascertain by a master what parts of the water works owned by the defendant it could convey to the town, and the value of the same.   The defendant filed an answer October 15, 1895, in which it advances certain matters by way of demurrer, and, after full argument, the demurrer was overruled March 28, 1896 (19 R. I. 414), and on April 27, 1896, a decree was entered in accordance with the opinion of the court as follows:

"And now, the demurrer of the Bristol & Warren Water Works to the bill of complaint in the above-entitled cause having been overruled: *upon motion of the complainant,* it is ordered that said cause be referred to Thomas C. Greene, Esq., one of the standing masters in chancery of this court, to inquire and state to the court how much and what part of said water works and water-works system of said town of Bristol in said bill described the defendant, the said Bristol & Warren Water Works, can convey to the complainant for use in connection with a system of water works for said town of Bristol,

and how much and what part of said water works and water-works system it is incumbent upon the complainant to purchase and pay for in accordance with the terms of contract between said complainant and George H. Norman, in said bill referred to; and also what is a fair and reasonable price to be paid by the complainant for the same," etc., etc.

This decree was subscribed by counsel as follows:

"We assent to the entry of the foregoing order.

"COMSTOCK & GARDNER,
"*Plaintiff's Solicitor.*

"B. M. BOSWORTH,
"*Of Counsel for Defendants.*"

It is to be observed that this decree, by necessary implication, awarded to the complainant the relief it prayed for, and afforded the only means available for enforcing the right to purchase which it claimed. The court could hardly have done this without the consent of the defendant, for there were material statements in the bill which were traversed by the answer. Among these were the allegation that the water supplied by the defendant was inadequate in amount and inferior in quality to the supply which the complainant was entitled to under the contract, and the statement that the defendant could not convey a complete system of water works to the town of Bristol.

By consenting to this decree both parties waived these issues as a ground for relief, and referred them to the master as involved in the duty of ascertaining what could be bought and how much ought to be paid for it.

A subsequent order entered by consent May 23, 1896, substituted the name of David S. Baker, Esq., as master, for the name of Thomas C. Greene, who declined to serve, but did not change the decree otherwise.

It appears that the defendant repented its hasty assent to these decrees, for on October 31, 1896, it filed a motion as follows:

"And now in the above-entitled cause comes the respondent, and moves that the interlocutory order entered April 27,

1896, referring the cause to a master be revoked, and that the said cause be set down for a hearing on bill and answer."

This motion was opposed by the complainant, and its right to go to a master to determine the terms of the purchase was re-affirmed.    The rescript, filed November 19, 1896, is as follows:

"PER CURIAM.    The decree which the respondents by their motion seek to have revoked, having been entered by consent, cannot be set aside or revoked except by consent.    2 Dan. Ch. Pr. 6th Am. ed. *973, 1,459, and notes; 5 Ency Pl. and Pr. 960.

"However, it appears that the motion is also to set down the cause for hearing on bill and answer.    By stipulation of the parties the bill was amended so as to incorporate the letter of Mr. Bosworth, and we find no denial of this letter or any statement of circumstances which can change the construction necessarily given to it on the hearing of the demurrer.    Whatever reason may have moved the respondents to refuse to appoint an arbitrator, or whatever expectation of procedure they may have had in mind after the demurrer had been disposed of, the letter was still a refusal which entitled the complainant to come into equity, and thereby their right to proceed in equity attached.    Motion denied."

The case then went to the master, and his report was filed April 7, 1900, and a supplemental report was filed June 29, 1901.    Exceptions taken by both parties were heard, and the decision of the court was announced July 27, 1901—23 R. I. 274—and a decree was entered January 21, 1902, in accordance with that opinion, recommitting the report to the master.    The court approved the master's finding that the water furnished was of reasonably good quality and ample in quantity, and overruled his finding that the respondent could not convey a complete system of water works to the complainant. It also held that the exclusive right for fifty years under which the respondent operated its works in the town of Bristol at the time the complainant elected to purchase was a part of the property to be bought and must be considered in fixing the value of the works.

The decree directed "that this cause be referred and recom-

13

mitted to David S. Baker, as special master, to set off to the complainant such portion of the reservoirs or water rights of the respondent as may be necessary to secure to the complainant a supply of water ample for its present and future needs; to determine what other property of the respondent should be conveyed to the complainant as a part of a system of water works for the complainant; to estimate the value of the reservoirs or water rights and the property thus to be conveyed, and of the rights, privileges, and franchises used and enjoyed by the respondent in supplying the complainant town with water, and to make statement thereof to the court," etc.

The decree is a re-affirmation of the former consent decree, expressed in different language with more particular directions to the master, but in no way changing the duties imposed upon him. It directs him in effect to make another attempt to ascertain the property to be conveyed and the price to be paid for it.

It now appears that after the entry of this decree neither party took any further steps before the master or the court until January 30, 1903, when the complainant filed the motions under consideration.

They were all simultaneously filed, but as the view which we take of the petition for leave to file an amendment or supplemental bill is decisive of all the applications, we will consider that petition first.

It asks permission to allege that the water now furnished by the defendant (1) is unsuitable for drinking, culinary, and domestic uses; (2) for manufacturing uses; (3) that the supply is insufficient in quality and pressure; (4) that the pipes are old and defective, and so arranged as to give the complainant only a surplus after the town of Warren is supplied; (5) that the works have depreciated, since the case was before the master, by neglect of the defendant; (6) that to remedy these defects it is necessary to clean the reservoirs, fence them in, establish a filtration plant, reconstruct the dam at Kickemuit reservoir, reconstruct a new pumping station, with its appurtenances, etc., and that these deficiencies and defects should be considered in estimating the value of the property

to be conveyed; and (8) to pray that the court will declare that the defendant has failed to furnish sufficient water in quantity and quality, and hence will eliminate the defendant's exclusive franchise and relieve the complainant from its offer to purchase any part of said water works; that, because of depreciation in value since the filing of the bill, the complainant may be relieved of its offer to purchase any part less than the whole of a complete system of water works; that the present value of such completed system may be determined; that the findings of the master may be reversed and adjusted to the allegations of this amendment.

(1)   A comparison of the matter thus presented with the original bill is sufficient to show that it is not admissible either as an amendment or as a supplementary bill or as a bill in the nature of a bill of review.

This petition does not offer the amendment in substitution for the allegations and prayer of the bill, but as an addition thereto; and the bill, if amended as proposed, would contain contradictory assertions and prayers for relief to such an extent as to be unintelligible.

As is aptly said in the defendant's brief: "If such a petition were allowed we should have the singular situation of a complainant in one part of his bill making an offer for certain property and praying that the defendant may be compelled to convey it to him, and in another part of the same bill asking to be relieved of this same offer. For an original bill and amended bill and a supplemental bill are in legal contemplation only one bill. *Cunningham* v. *Rogers*, 14 Ala. 147."

The inconsistency is not confined to the main contentions of the bill; it is conspicuous in its minor details. Thus, the bill alleges that the water supply is insufficient in quality and amount and the complainant has no use for any part of the system except the stand pipe and the pipes and appurtenances in the town of Bristol, and asks that the defendant be compelled to sell these; the amendment alleges that the water supply, always bad, has become worse since the filing of the bill; that the complainant has no use for the pipes, etc., with-

out water supply, and asks leave to withdraw its offer to buy these; that is, because the water is bad the defendant ought to be compelled to sell the pipe system by itself, and the complainant is willing to purchase that part of the water works; and also, because the water is bad the complainant ought not to be compelled to buy the pipes without the water supply, and asks to be excused from doing so. The amendment asks that the complainant be excused from buying, or, if it must buy, that both the forfeiture and purchase clauses of the contract be enforced together, one of these clauses by its terms taking the whole franchise, the other taking away only its exclusive character.

Such an amendment, after the prayer of the bill has been granted and proceedings have been ordered by a consent decree and are going on to carry out the contract, is anomalous. Whether in the form of an amendment or of a supplemental bill, such a change of position is not permitted by the rules of chancery practice. It is not the office of an amendment or of a supplemental bill to set up new rights or a new case. New matters may thus be added, like changes of title, etc., but not new causes of action.

The principle has been repeatedly asserted by this court. *National Bank of Commerce* v. *Smith*, 17 R. I. 244; *Smith Granite Co.* v. *Newall & Co.*, 22 R. I. 302; *Haskins* v. *Glezen*, Eq. 5720, March 23, 1903.

In *Straughan* v. *Hallwood*, 30 W. Va. 274, it is held that a party who has no cause of action at the time of filing his original bill cannot maintain his suit by filing a supplemental bill stating facts subsequently arising out of the transaction, the subject of the original bill. The court say, page 294: "There is another objection to this supplemental bill so fatal that the court was bound to dismiss it at the hearing. The supplemental bill being but an addition to the bill and as asked for on the very face of the bill to be read with it, of course no decree could be rendered upon it if it was based upon grounds and sought a redress utterly inconsistent with the original bill."

The defendant cites, besides this case, numerous authori-

ties to the same effect, among which are Dan. Ch. 1515, notes; *Leonard* v. *Cook*, 21 Atl. Rep. (N. J.) 47; *Gillett* v. *Hall*, 13 Conn. 426, 434; *New York Security Co.* v. *Lincoln St. Ry. Co.*, 74 Fed. Rep. 67; *Milner* v. *Milner*, 2 Edw. Ch. 114; *Barker* v. *Prizer*, 48 N. E. Rep. (Ind.) 4, 5; *Clark* v. *Hull*, 31 Miss. 520; *Heffron* v. *Knickerbocker*, 57 Ill. App. 339.

(2)    So much of the matter of amendment as would be appropriate in a bill in the nature of a bill of review is inadmissible because it seeks to set aside a consent decree.

In *Hazard* v. *Hidden*, 14 R. I. 356, a motion to amend the bill was made, as the present one is, while the case was pending before a master under a decree entered by consent of the parties, and the case is decisive of that part of the present petition. The court must meet the complainant's attempt to set aside the decree with the same answer which it gave the defendant in the rescript of November 19, 1896, quoted above.

(3)    The petition for re-argument and rehearing is based upon the claim of newly discovered evidence of the quality and quantity of the water, and upon the allegation that the court erred in finding that the offer of the complainant to purchase any part or parts of said water works was accepted by the answer of the defendant, and that the court erred further in holding that the defendant's exclusive franchise should be considered in estimating the price to be paid for the water works because the defendant has forfeited his exclusive franchise by not furnishing water of good quality.

The evidence submitted as newly discovered is entirely cumulative, except such as relates to the conduct of the defendant since the beginning of the suit; and as the complainant elected to buy the water works before the suit commenced, the equitable ownership of the franchise passed to the complainant and could not be forfeited by any subsequent act or neglect of the defendant.

The franchise consisted of the right to supply water to the town of Bristol and its inhabitants for a certain term of years without competition. This right the defendant had at the time of the vote to purchase. Then it passed to the town irrevocably. The defendant now can only supply water in Bris-

tol until the town takes possession of its works.   The value of the franchise is measured by the profits which can be made in the business, less interest on the value of the plant.   Since the vote of the town these profits in equity became the property of the town, and the defendant on final settlement must account to the town for them.   It is running the works now not on its own account but as trustee of the town.   It no longer owns the franchise and cannot forfeit it.

There is nothing in the evidence relating to the condition of the water at the time the bill was filed which leads us to believe that the voters of the town were deceived as to the quality of the water they were using every day when they voted to purchase.

The same water shed and the same rainfall supply the water now, and when the town comes into possession it can increase the capacity of the reservoirs at its pleasure.

The court interpreted the answer of the defendant as accepting the offer of the bill to purchase the whole or any available portion of a complete system of water works.   If this was error it was harmless for two reasons.   The defendant did accept this offer by signing the consent decree, and as we have found upon the evidence submitted to the master the defendant can deliver to the complainant a complete system of water works, it makes little difference whether we call the decision of the complainant to take a part and the assent of the defendant thereto a claim and an admission of right, or an offer and an acceptance.

This petition must therefore be dismissed.

The third petition, for a stay of proceedings before the master, depends upon the granting of the other two and must likewise be dismissed.

(4)   In effect the three petitions together amount to a request for leave to discontinue the present bill and bring a new one to declare that the defendant has forfeited its exclusive franchise.

If the application came in that form only two reasons could be urged in favor of it.

First, that the property when the complainant elected to purchase it in 1895 was worth less than it appeared to be.   But

the whole question of values is still open before the master, and he will hear any evidence on that subject, whether known to the parties then or discovered since. Pomeroy Con. Spec. Perf. § 456.

(5)    Secondly, that the neglect of the respondent to keep the water works in good condition ought to excuse the complainant from purchasing any part of the system.

It has been held in Massachusetts that a town cannot rescind its vote to purchase a water works, but that the vote completed a contract from which the town could not withdraw. *Braintree Water Supply Co.* v. *Braintree*, 146 Mass. 482; *Rockport Water Co.* v. *Rockport*, 161 Mass. 279.

So where one has contracted to sell land and the vendee has announced his option to buy, the vendor and his heirs hold the legal title in trust for the vendee. *Newport Water Works* v. *Sisson*, 18 R. I. 411, 413.

In the ordinary case of a contract of sale, where the vendor is ready to convey and the delivery is only postponed until the vendee shall pay the price, so much is the vendee considered in contemplation of equity as actually seized of the estate that he must bear any loss which may happen to the estate between the agreement and the conveyance; and he will be entitled to any benefit which may accrue to it in the interval.

And the reason assigned is that, by the contract, he is the owner of the premises to every intent and purpose in equity. *Robb* v. *Mann*, 11 Pa. St. 300, citing *Richter* v. *Selin*, 8 S. & R. 440; Sug. on Vend. cap. 5, § 1, p. 270; *Reed* v. *Lukens*, 44 Pa. St. 200.

The vendor who is prepared to deliver is not obliged to keep the property in repair or to prevent deterioration from natural causes.

*Hellreigel* v. *Manning*, 97 N. Y. 56, 61, 62; 2 Warvelle on Vendors, 2nd ed. par. 181, 182, par. 842; *Morgan* v. *Scott*, 26 Pa. St. 51, 54.

We think these principles cannot be held strictly to govern the present case. Here the contract binds to an absolute sale, but the property to be delivered is undetermined. The complainant has invoked the aid of the court to compel the de-

fendant to convey. The defendant has admitted its obligation, and by consent both parties have referred to the master the questions preliminary to delivery of the property and payment therefor. In these circumstances it seems to us to be the duty of the defendant to the complainant to take such care of the property as a prudent man would take of his own, but not to provide against the deterioration caused by time and natural wear, or to make improvements or additions thereto. The principles laid down by Lord Selborne in *Phillips v. Silvester*, 8 Ch. App. 173, 176, seem to us quite applicable. He says: " On principle I can see no reason why a vendor who insists in continuing in possession of the land over which he has security—the contract being one which in the view of a court of equity has changed the title of the land— I see no reason why such a vendor should not be under the same obligations as those under which any other person would be who, having security on land, insisted on the possession of the land as a further security. He, when the account comes to be taken between himself and the purchaser, will be entitled to credit for all proper expenditures for the purpose of maintaining the purchaser's property in a proper condition as against the account of rents and profits to which he is necessarily subject. He will receive, on the other hand, the interest which, by the contract, he is entitled to receive. Perfect justice is done in that way."

Undoubtedly, when it was found that by leakage in the dam of the lower reservoir the salt water was mixing with the water stored, it became the duty of the defendant to repair the leak, as the evidence shows it did; but it is not the duty of the defendant, as vendor, to establish filters which have never existed and to acquire the right to fence out cattle from access to the river and ponds when the complainant elected to purchase the plant without these safeguards. So long as the reservoirs are of sufficient capacity to contain the requisite supply of water, we cannot see that it is the duty of the defendant to deepen them. The defects in the plant which may have accrued from natural decay since 1895 may as well be attributed to the negligence of the complainant in

not pressing this suit as to the defendant. If either party had shown due diligence the litigation might have been much abridged.

The peculiar character of this property, charged as it is with a public trust, may be considered to impose a greater measure of care upon the vendor while it is in its possession than is usual in sales of land generally. But if special and extraordinary expenses are required to be made in the interest of the consumers and the parties cannot agree upon the adjustment of such expenses, the court, having acquired jurisdiction of the subject matter, may, on proper application, give directions for its preservation and even for necessary extensions and improvements, and may direct how the same shall be paid for; but the fact that the respondent has not made such improvements without some understanding with the complainant or some direction of the court on the subject is not just ground for a rescission of the contract of sale or for adjudication that the franchise was not a part of the thing purchased.

The fifth allegation in the proposed amendment is of matter which, if true, the complainant will be entitled to bring before the court at the proper time. The first step in furtherance of the case must be to ascertain what property is to pass from the defendant to the complainant; then the value of that property at the time when the complainant voted to purchase must be ascertained; then, when the time of delivery and payment arrives, any depreciation caused by the vendor's fault or neglect may be deducted from the fixed valuation at the time of the purchase. A statement of such depreciation now is impossible, and an attempt to ascertain it would be premature.

*Francis Colwell* and *Albert A. Baker*, for complainant.

*James M. Ripley* and *Edwards & Angell* and *Henry W. Hayes*, for respondents.