## Cox vs. Wheeler.

Where a mortgagee whose mortgage is payable by instalments, sells the premises under a statute foreclosure to pay the amount which has become due, subject to the future instalments, the mortgaged premises in the hands of the purchaser are, in equity, the primary fund for the payment of such future instalments; and the mortgagor in such a case is entitled to the surplus monies, arising from the statute foreclosure, beyond the instalment which has become due and the costs of sale.

If the mortgagee himself become the purchaser, in such a case, the whole equity of redemption becomes merged in his legal estate in the premises; and his claim upon the mortgagee for the payment of the future instalments is extinguished, so that he cannot offset such instalments in a suit brought against him for the surplus monies arising upon the sale.

Where a third person becomes the purchaser, subject to such future instalments, and the mortgagor is afterwards obliged to pay the same by a suit at law upon his bond, he is in equity entitled to be subrogated to the rights of the mortgagee; so as to obtain remuneration by means of the lien of the mortgagee upon the land as the primary fund for the payment of such instalments.

When a mortgage is payable by instalments, the mortgagee has a right to sell the premises discharged of the lien of future instalments, and to retain the whole amount of his mortgage and costs out of the proceeds of the sale.

Sept. 18. THIS was an appeal from a decree of the late vice chancellor of the fifth circuit, dismissing the complainant's bill with costs. In September, 1830, the complainant held a bond and mortgage against the defendant, payable by instalments; on which was then due $558,33, and the further sum of $300 and interest was to become due and payable on the 27th of August, 1831. The complainant advertised the premises for sale, on a statute foreclosure, and on the 17th of March, 1831, the premises were sold at public vendue, *subject to the future instalment,* and were bid in by the complainant at $800. After the sale the defendant brought a suit in the court of common pleas to recover the surplus, bid upon the sale, beyond the amount of the payments which had become due and the costs of foreclosure. After the last instalment became due the complainant filed his bill in this cause, alleging that the mortgaged premises were not worth more than the $800; that the defendant was in em-

barrassed circumstances, and praying that the amount of the last instalment might be offset against the surplus for which the suit in the common pleas was brought. The allegations in the bill were admitted by the answer, except the allegation that the mortgaged premises were not worth more than the $800 bid for the same upon the statute foreclosure. On the contrary, the defendant alleged that the premises were worth $1500. A replication was filed to the answer, but no testimony was taken by either party.

The following opinion was delivered by the vice chancellor:

DENIO, V. C. The main question in this case is, whether the instalment of $300, which fell due since the sale, was not extinguished as a personal charge against the defendant by the sale and purchase by the complainant. In the case of *Bellenger and others* v. *Shoemaker and others*, decided by me on the 3d of February last, this precise question was presented for adjudication. And upon a full consideration of the statute and the authorities cited upon the argument of that cause, I determined that the future instalment was in equity discharged as against the mortgagor, and that it became a specific charge upon the land in the hands of the purchaser, who was a stranger, and his grantees; and I directed it to be satisfied out of the premises in the hands of the defendant, to whom it had passed by mesne conveyance from the purchaser with constructive notice of the transaction. Referring to the opinion delivered upon that occasion, which has, I believe, been acquiesced in, I will add such other remarks as have occurred to me.

Upon the non-payment of an instalment due upon a mortgage containing a power of sale, the mortgage strictly becomes forfeited, and the mortgagor may foreclose the defendant's equity and subject the premises to a sale in this court, or may procure a sale by advertisement under the statute. If he pursues the latter course, the premises are sold to satisfy the money which is secured by the mortgage; and if there is any surplus beyond the instalments which have be-

come payable, the mortgagee retains it to pay the remainder of the mortgage debt ; and it is only the surplus after the whole debt is paid, which is to be rendered to the mortgagor or his representatives. See 2 *R. S.* 545, § 2, *sub.* 2, to show that *any* default in the condition of a mortgage is sufficient to authorise this proceeding, where the power of sale, as in this case, declares that the sale may take place for any default ; and *Id. p.* 246, § 6, shewing that it is only in a case where the mortgaged premises consist of " distinct farms, tracts or lots," that no more than the amount due and payable at the first publication of the notice is to be raised by the sale. In all other cases, the whole premises must necessarily be sold, and the whole debt, whether then payable or to become payable thereafter, must be paid to the holder of the mortgage. The statute does not contemplate any such proceeding as that adopted by the complainant, of selling subject to future instalments ; and in an ordinary case, upon the usual notice, the purchaser would acquire by the sale all the title which the mortgagor had at the time of the execution of the mortgage, discharged from the incumbrance of the mortgage ; or in other words, the purchaser would acquire the whole estate and interest of the mortgagor and of the mortgagee. (*Lansing* v. *Goelet,* 9 *Cowen,* 358. 2 *R. S.* 546. § 8.) And in such a case as the present, if a stranger had become the purchaser, the mortgage as a mortgage would be spent, and would no longer be a lien upon the premises for a future or any other instalment ; (9 *John. Rep.* 258 ;) yet an equitable lien would be created in favor of the mortgagee against the purchaser, for the future instalment which he would be deemed to have assumed. The effect of foreclosing a mortgage before the whole debt has become due, must frequently be to subject the debtor to have his property applied to the payment of a debt which is not wholly due ; and this is equally so where the foreclosure takes place in this court, except that in the latter case there may be a sale in parcels, where it can be done without injury to the interest of the parties. But the premises may not consist of distinct tracts, farms or lots ; and then by a chancery foreclosure, in a particular class of cases, only sufficient to pay the amount

due will be sold; when, if the foreclosure had been by advertising the whole would have been sold. There can be no doubt that it is in the power of the mortgagee to allow to the purchaser a credit or postponed period of payment upon those sales, as to the whole of the money which he is entitled to retain, or any portion of it; and where he chooses to do so, he may determine for himself what security he will exact for the eventual payment of the money. And I see no objection to the insertion of a notice, in the advertisement of sale, of the mortgagee's determination to give such credit, and of the security which he will require. The rights of the mortgagor would not be impaired, but would be generally promoted by such a previous notice of the dispensation, on the part of the mortgagee, with the more rigorous terms of ready payment, which he would have a right to require. In this case it would have been entirely correct for the complainant to have advertised that, on the sale of the mortgaged premises, he would not exact the payment down of an amount of three hundred dollars of the money for which the premises might be sold, but would give a credit in respect to that sum until the time when the instalment of that amount would become payable, by the terms of the bond and mortgage; requiring, however, as his security, a lien upon the mortgaged premises in the hands of the purchaser. This would not have differed in effect from the complainant's proposition, in the advertisement in this case, to sell subject to future instalments; except that the form actually pursued by the complainant supposes the law to make a provision in respect to the future instalments, which should properly have been the subject of an agreement between the mortgagee and the purchaser by the insertion of the special terms of sale above suggested in the advertisement, and stating the same on the occasion of the sale, and the acceptance thereof by the purchaser. By the auction sale of these premises which was actually proposed by the advertisement, the bidders were to declare what sum they were to pay down for the mortgaged premises, and to take them charged with the remaining instalments and interest, to be paid by the purchaser at the period fixed for their payment in the

1838.

Cox
v.
Wheeler.

mortgage; and this must be presumed to have been so understood by the bidders. By bidding $800, the complainant declared his assent to take the premises for an aggregate amount equal to the instalment added to the $800. Upon any other supposition, the condition of the sale that the premises would be subject to future instalments would be idle and senseless. It is presumed that a person attending for the purpose of becoming a purchaser, would make himself acquainted with the amount and the time of payment of the future instalments, and would bid such amount as added to the amount of the instalment he deemed the premises worth. And if these premises had been sold to a stranger, under the same terms of sale upon which they were sold to the complainant, I should have held the purchaser liable, and the land bound for the remaining instalment, not by the force of the original mortgage, but of the contract resulting from the circumstances of the transaction. I should also have decreed the mortgagor to have been discharged, and the bond and mortgage satisfied, and that the surplus belonged to the mortgagor. The complainant ought not to be in a better condition than a stranger who should have purchased. He consequently must give up the remaining instalment, and must pay over the surplus which remains of the amount bid, after paying thereout the amount which had become payable, with interest and costs.

It is true, as argued by the complainant's counsel, that a mortgage before foreclosure is merely a security for a debt; that the debt is the principal subject, and the mortgage is a collateral pledge of the land for the debt. But this does not continue to be the case after foreclosure. There the land becomes the absolute property of the purchaser, and the debt is extinguished in whole or in part; and that portion which remains unsatisfied remains the debt of him who originally owed it, unsecured by the pledge which is exhausted. Suppose, in this case, the land had in truth been worth precisely the amount of the mortgage debt due and to become due, and it had been sold in the manner in which this was sold, and the complainant had bid precisely the amount due, no one would of course bid more, for that sum, with the remain-

1838.

Cox
v.
Wheeler.

ing instalment which it would have been sold subject to, would have been its whole value. Ought the defendant to pay the remaining instalment? Upon the principles contended for by the complainant's counsel he must have done so; and yet nothing can be clearer than that such a proceeding would subject him to the payment of the instalment twice—once in an equivalent amount in value of the mortgaged premises, and again in a suit to be brought by the complainant.

One argument of the complainant's counsel is, that the advertisement and declaration, that the premises were to be sold and the actual sale thereof subject to future instalments, not being authorized by the statute, were merely nugatory, and did not affect the rights of the parties; and that the matter is to be received as though the sale had been in the ordinary form, unattended by that circumstance. There cannot, as it seems to me, be any doubt but that these peculiar conditions of the sale diminished, to the amount of this last instalment, the amount for which the premises were sold. But a perfect answer to the position is found in the consideration, that if it is correct there is no occasion whatever for the interference of this court, for in that case the surplus moneys belonged to the complainant. I know it was said, in answer to this suggestion, that the defendant could not object to there being a remedy at law, inasmuch as it was not objected to in the answer. But the relief here sought is a set-off of the last instalment against the surplus moneys; and if there be no surplus moneys, there is nothing to set off against the instalments. The amount of the bid *eo instanti* applied itself to extinguish so much of the mortgage debt, and if the defendant has commenced an unfounded suit in Onondaga common pleas, I ought to presume that that court will hold in accordance with the law as it is.

The complainant's counsel illustrated his views of this case by the supposition that a person has two bonds and mortgages, of different dates, upon the same premises against the same person, and that he sells on the younger one and becomes the purchaser, at less than the value of the land, and asks whether the debt secured by the older mortgage

would not be good against the person. In the case supposed, the senior mortgage is in truth a lien and unaffected by the sale, whether any notice is given at the time of sale or in the advertisement, or not, unless indeed it is fraudulently concealed. Here, the condition is one which does not legally appertain to the transaction, but is introduced by the party and assented to by the purchaser; it becomes by convention a part of the contract, which essentially varies the case. Besides, in the case supposed, if it be admitted that the premises are really worth the amount of the prior incumbrance in addition to the amount bid, and the subject should be so situated that the creditors should be obliged to come into this court to collect the older debt, I am not satisfied that he would be entitled to relief. The case of two judgments and a sale under the junior one, has still less analogy; for judgments are only a general as distinguished from a specific lien upon land, and one might well give a full price for land sold under a junior execution if the judgment debtors were able to pay the older one. It may be that the complainant would have been entitled to relief in this cause, on the ground of misapprehension of his right, upon a bill setting forth a case of that character. But upon the facts appearing in these pleadings, I think he has no equity whatever; and I therefore order the bill to be dismissed with costs.

*P. Gridley*, for the appellant. The last instalment on the bond of the complainant was a demand capable of being set off at law, and might have been thus set off had it fallen due before the commencement of the suit; (2 *R. L. p.* 354, § 18, *sub.* 1*st & 4th*,) and of course a proper subject matter of set off here. (4 *John. Ch. R.* 287.) The legality of complainant's demand, the legal impediment to the set off at law, the propriety of preventing a circuity of action, and a motion to set off of judgment, and the admitted insolvency of the defendant, render the plaintiff's demand a proper subject of set off against the defendant's claim and costs of suit. (*Simson* v. *Hart*, 14 *John. Rep.* 75, 6. *Rosevelt* v. *Niagara Bank*, 1 *Hopk.* 79. *James* v. *Kimms*, 5 *Ves.* 108,

111, 112. *Reed* v. *Bank Newburgh*, 1 *Paige*, 218. 2 *Id.* 405. *Lindsey* v. *Jackson*, 2 *Id.* 581.) The lien for the costs of the defendant's attorney will not prevent this set off. The attorney's lien only attaches to the balance after the rights of the parties are settled. (*Mohawk Bank* v. *Barrows*, 6 *John. Ch. R.* 317. 1 *Paige*, 625.) The mortgaged premises having been sold under a statute foreclosure to satisfy the first instalments, the last instalment remained a personal debt against the defendant, notwithstanding the land was sold subject to future instalments, and the complainant became the purchaser. The mortgage is only an incident, being only a collateral security for the debt and the personal liability exists till the whole debt is paid some times even against an agreement. (*Ainslee* v. *Wilson*, 7 *Cowen*, 662. 4 *Kent Com.* 2d ed. 159. *Jackson* v. *Hull*, 10 *John. R.* 481. *Globe Ins. Co.* v. *Lansing*, 5 *Cowen*, 380. *Jones' opinions*, 9 *Cowen*, 346, 352. 2 *Id.* 195.) A statute is equivalent to an equity foreclosure. The fact of the complainant being purchaser, makes no difference with his rights. (2 *R. S.* 546, § 7. 9 *Cowen*, 346.) The sale, although subject to future instalments was nevertheless absolute, the purchaser taking it discharged of the lien. The land could have been sold in parcels if desirable, but the lien was indivisible, and was exhausted by the first sale. (*Henus* v. *Dygert*, 8 *John. R.* 257. 9 *Cowen*, 358.) If the land did pass to the purchaser "subject to future instalments," this, in judgment of law, only means that the land continues to be a fund to which the mortgagee may look for the residue of his demand, just as it was subject to all the instalments before any sale was made. In either case the mortgagee is at liberty to collect his debt of the person or the land. It is like the case of land bound by two judgments where the sheriff sells on the junior, and gives notice that there is an elder judgment. (7 *Cowen*, 662.) Cox had a right to be the purchaser, and he bought the land discharged of the equity of redemption, by the statute foreclosure, (*Troup* v. *Wilson*, 2 *Cowen*, 195,) and the original debt was diminished by the amount of money received on the sale, and not by the value of the land. (9 *Cowen*, 352.

5 *Id.* 380.) The surplus monies sued for by the defendant, should be regarded as so much land converted into money; and not being yet paid over, is subject to the control and disposition of the court, so that upon the falling due of the last instalment an equitable lien attached to the money for the satisfaction of that instalment. The case in 3 *John. Ch. R.* 229, relied on by the vice chancellor in *Bellinger* v. *Shoemaker*, does not apply to this case. The mortgagee, by the sale, intended that the mortgage quoad the instalment not due should remain a lien on the land without relinquishing the personal liability of the mortgagor. It is like the case of a mortgagee holding two mortgages, and selling on the junior mortgage and giving notice that the sale is subject to the senior mortgage. If the condition of the sale was nugatory, the sale was absolute, and the remaining instalment continued confessedly a personal debt of the mortgagor. (9 *Cowen*, 346, 369, 380.)

*B. D. Noxon*, for the respondent. Where money is secured to be paid by a mortgage in two instalments, the mortgagee may foreclose at law when one instalment falls due. And where the premises consist of distinct farms, tracts or lots, they shall be sold seperately; and no more farms, tracts or lots shall be sold than shall be necessary to satisfy the amount due on such mortgage at the time of the first publication of notice of sale with interest and the costs and expences allowed by law. (2 *R. S.* 546, § 6.) It must follow that where the premises consist of a single village lot, no separate sale can be made, and if more be bid than the amount then due and the costs, the mortgagee has the right to hold it and apply it towards the instalment not due. The mortgagee has a right to advertise and sell to raise the amount of the instalment due, subject to the future instalment. If the mortgagee so sells and the purchaser so buys, this court will enforce the contract, but especially if the mortgagee himself becomes the purchaser under such an advertisement and sale. The effect of such purchase by the mortgagee under such an advertisement and sale must be to invest him with the title to the premises

discharged from any equity of redemption in the mortgagor; and also to discharge the mortgagor from all personal liability for the unpaid instalment; the mortgagee making the premises a specific fund for the payment of such instalment. The sale having been subject to the future instalment, the surplus, after paying the first instalment and costs, was legally and equitably the money of the defendant, and he was justly entitled to recover it in a suit at law. And the complainant having elected to make the future instalment a specific lien on the premises, and the premises a fund for its payment, he has no debt to set off against the demand of the defendant. By bidding in the lot, the complainant became the owner of it and of the specific charge on it, and the latter was thereby extinguished.

THE CHANCELLOR. Upon the facts in this case, I cannot see that there is any foundation, either in law or equity for the claim set up by the appellant to offset the last instalment due on the bond and mortgage, against the surplus monies raised by the statute foreclosure for the previous instalments. On the contrary, if, as alleged in the answer, the value of the premises was as much or more than the amount of the last instalment in addition to the $800 bid at the sale, the respondent would have a perfect right in equity to restrain the appellant from proceeding at law on his bond to collect the amount of the last instalment. The mortgagee had the right to sell the premises discharged of the lien of the future instalment, and to retain the amount of such instalment out of the purchase money if there was any surplus beyond the amount which had then become due and the costs of the statute foreclosure. And if he chose to sell subject to the incumbrance of the instalment which was not then due, in legal intendment the premises would bring so much less on the sale; and the purchaser would take the premises subject, in equity, to the payment of the incumbrance thereon. In such a case the mortgaged premises become, in equity, the primary fund for the payment of the amount of the incumbrance. And if the mortgagee becomes himself the purchaser, the incumbrance becomes

merged in his legal estate in the equity of redemption ; and the debt is, in equity, extinguished. The equities of the parties on such a sale are similar to those which arose in the case of *Tice* v. *Annin*, (2 *John. Ch. Rep.* 125,) where the mortgagee having recovered a judgment at law upon the bond given with the mortgage, proceeded to sell the equity of redemption upon execution on such judgment ; in which case it was held by Chancellor Kent that the purchaser took the premises subject to the payment of the balance due upon the mortgage. In other words, the sale being made subject to the incumbrance, the land itself became thereby, in equity, the primary fund for the payment of that incumbrance ; and if the premises were sold to a stranger, the mortgagor, upon being compelled to pay the incumbrance by suit upon the bond, would be entitled to be substituted in the place of the holder of the incumbrance as to the remedy against the land as the primary fund. In such cases it is perfectly immaterial whether the mortgaged premises or the personal bond of the mortgagor was originally the primary security for the payment of the debt ; provided the party who is personally liable for the payment of the mortgage is the owner of the equity of redemption at the time the premises are sold subject to the incumbrance, or if he has sold his interest in the equity of redemption to another who is either legally or equitably bound to pay such incumbrance.

In the present case the equitable rights of the parties would have been the same, even if the appellant had held two separate and distinct bonds and mortgages of the respondent which were liens upon the same premises. And he could not, in that case, have sold on one of the mortgages by a statute foreclosure, subject to the incumbrance of the other mortgage, without making the mortgaged premises in the hands of the purchaser the primary fund, in equity, for the satisfaction of that incumbrance.

The decree appealed from is therefore not erroneous ; and it must be affirmed with costs.