# McLean *v.* Presley's Adm'r.

*Bill in Equity for Foreclosure of Mortgage, Account, &c.*

1. *Sale of mortgaged lands, under power, before maturity of entire debt.*—Where the condition of a mortgage, given to secure the payment of several promissory notes, falling due at different times, authorizes a sale of the mortgaged lands on default being made in the payment of "the said promissory notes *as they fall due*," the mortgagor is in default so soon as he fails to pay any one of the notes at maturity; and the mortgagee may then sell the entire premises, not being divisible without impairment of their market value; and he may retain, out of the proceeds of sale, a sufficient amount to pay the notes not then due.

2. *Foreclosure of mortgage by sale under power.*—When a mortgage has been

foreclosed by a sale under the power contained in it, the mortgagee cannot afterwards file a bill to foreclose, although he became himself the purchaser at the sale, or subsequently bought from the purchaser at the sale.

3. *Purchase by mortgagee at sale under power.*—When the mortgagee purchases, either by himself, or through the intervention of a third person as his agent, at a sale made by himself under a power in the mortgage, the sale will be set aside in equity, on the timely application of the mortgagor; or the mortgagee himself may come into equity, to have the uncertainty of his title resolved, by a confirmation of the sale, if agreeable to the mortgagor, or by a resale under the order of the court.

4. *Receiver; when appointed, at instance of mortgagee.*—A receiver of the rents and profits of mortgaged lands will sometimes be appointed, at the instance of the mortgagee, in aid of an action at law to recover the possession, when the mortgagor is insolvent ; but, when the mortgagee, having bought at his own sale under the power in the mortgage, files a bill to have the uncertainty of his title resolved by a confirmation of the sale or a resale, he cannot have a receiver of the rents and profits appointed, because the mortgagor is committing waste and is insolvent.

5. *Who may file bill to remove cloud from title.*—A bill to remove a cloud from the title to land cannot be maintained by a person who is not in possession.

APPEAL from the Chancery Court of Autauga.

Heard before the Hon. CHARLES TURNER.

The bill in this case was filed on the 21st November, 1874, by Evan Presley, since deceased (the suit being revived in the name of his personal representative), against William McLean and his wife, Mary McLean ; and sought the foreclosure of a mortgage on a tract of land, an account of the mortgage debt, taxes paid, &c., the appointment of a receiver to take charge of the land and collect the rents and profits, and for general relief.   The land was sold and conveyed by the complainant to said William McLean, on the 7th December, 1871, at the price of $4,500; of which sum, $1,000 was paid in cash, and for the residue said McLean executed and delivered his four promissory notes, for $875 each, payable on the first January, 1873, 1874, 1875, and 1876, respectively, with interest from date; and also executed a mortgage on the lands to secure the payment of the said notes, containing a power of sale, the words of which are copied in the opinion of the court.   McLean was put in possession of the lands under the contract, and continued in possession up to the filing of the bill.   Default having been made in the payment of the second note, the complainant advertised and sold the lands, under the power in the mortgage, on the 31st January, 1874; John E. Jones becoming the purchaser at the sale, at the price of $2,920.   The bill alleged, that said Jones bid off the lands at the request of the complainant, with the understanding and agreement between them that, if McLean delivered up the possession, Jones should take the lands at that price, and the complainant should allow him time to pay the money ; that the complainant accordingly executed a conveyance of the lands to said Jones, but,

said McLean refusing to deliver the possession, Jones re-conveyed them to the complainant; that the lands were chiefly valuable on account of a stone-ware factory located on them; that McLean had permitted the buildings and im-provements to decay and get out of repair, until the value of the lands was not sufficient to pay the residue of the mortgage debt; that he had also suffered the lands to be sold for taxes, and the complainant had been compelled to buy them at the tax collector's sale, in order to protect him-self; that McLean was insolvent, and that Mrs. McLean as-serted a claim to the land, on the ground that the cash pay-ment was made with money belonging to her statutory sep-arate estate.

An answer was filed by McLean, admitting the terms of the contract as stated in the bill, the execution of the notes and mortgage, and the sale under the mortgage; but he averred that the sale was premature, and that the complain-ant had no right to sell, under the power contained in the mortgage, until after default had been made in the payment of all the secured notes. He denied all knowledge of the al-leged agreement between the complainant and Jones, under which the latter became the purchaser at the sale under the mortgage; and alleged that Jones sued him at law for the land, under his deed from the complainant; and that his re-conveyance of the lands to the complainant was made after his defeat in that action, and was void on account of the de-fendant's adverse possession. He alleged, also, that the complainant had misrepresented the value of the land, and had established a rival factory in the neighborhood, in vio-lation of his promises at the time the contract was made; and he asked that his answer might be taken as a cross bill in reference to these matters, that an account might be ta-ken of the damages which he had thereby sustained, and that the amount might be allowed as a set-off against the complainant's debt. He denied that the value of the lands was deteriorated, or that the buildings were being destroyed or injured; and he demurred to the bill, on the ground that the complainant had an adequate remedy at law, being the holder of the legal title, and having foreclosed his mortgage by the sale under the power therein contained. A separate answer was filed by Mrs. McLean, admitting the sale under the mortgage; insisting that the mortgage was thereby fore-closed and extinguished, and the complainant could assert no rights under it, except as a link in his chain of title at law; alleging that the cash payment for the land was made by her husband with money belonging to her statutory sep-arate estate, of which fact the complainant had notice; and

asking that her answer might be taken as a cross bill, that a lien on the lands might be declared in her favor, for the moneys so paid, and that the lands might be sold for her reimbursement.

On motion for the appointment of a receiver in the cause, a decretal order was rendered by the chancellor, directing the register to appoint a receiver, unless the defendant, within twenty days, gave bond with sureties, conditioned to account for the rents and profits at the next term; and the bond not having been given, a receiver was appointed by the register. The cross bill of Mrs. McLean was dismissed, on her own motion. The chancellor overruled the demurrer to the bill, and on final hearing, on pleadings and proof, rendered a decree for the complainant; holding that the mortgage was not foreclosed by the sale under the power, and that the complainant was entitled to have the rents and profits of the lands appropriated to the satisfaction of the mortgage debt, and continuing the receiver in office for that purpose until the maturity of the last note. Each part of the chancellor's decree is now assigned as error by the defendant.

ELMORE & GUNTER, with W. H. & W. T. NORTHINGTON, for appellant, cited *Williams v. Hatch*, 38 Ala. 333; *Briarfield Iron Works Co. v. Foster*, at the last term; *Coker v. Whitlock*, at the last term.

WATTS & SONS, with DOSTER & ABNEY, *contra*, cited *Massina v. Bartlett*, 8 Porter, 277; *Levert v. Redwood*, 9 Porter, 79; *Duval v. McLoskey*, 1 Ala. 708; *Hitchcock v. U. S. Bank*, 7 Ala. 388; *Stover v. Harrington*, 7 Ala. 142; High on Injunctions, §§ 666-7.

STONE, J.—The condition of the mortgage in the present case is in the following language: "Upon condition, however, that if I pay, or cause to be paid, the said foregoing described promissory notes, with the interest thereon, as they respectively fall due, then this instrument is void and of no effect whatever, either in law or equity; but, if I fail to pay the said described promissory notes, as they fall due, with the interest thereon, then the said Evan Presley, or his legal representative, is hereby authorized and empowered to take possession of the said described lands and tenements, and, after giving twenty days' notice of the time, place, and terms of sale, in some newspaper published in said county, sell the same to the highest bidder for cash," &c. The notes described in the mortgage were four in number, due severally January 1st, 1873-4-5-6. The second of said notes remain-

ing unpaid, the mortgagee, having duly advertised the sale, by advertisement bearing date January 7th, 1874, sold the lands on 31st January, 1874, to the highest bidder for cash ; and John E. Jones became the purchaser, and received a deed. By arrangement with the mortgagee, he did not pay cash, but gave his notes for the purchase-money. Subsequently, on the 3d October, 1874, said Jones reconveyed the lands to Presley, the mortgagee, with implied covenants of warranty, but not expressed. The present bill was filed October 13th, 1874, McLean being in possession. The last two of the notes had not then matured.

The bill takes the position that the sale, January 31, 1874, was premature, and conferred no title ; and that when Jones reconveyed to Presley, he simply restored him to his original status as mortgagee. Under this view it is contended, that the power of sale in the mortgage could not be executed, until all the notes were past due ; and taking this position, the bill charges, that the mortgagor was committing waste, and that he was insolvent ; and the bill prayed and obtained the appointment of a receiver, and prayed for the foreclosure of the mortgage, and for general relief.

We think the language of this mortgage forces us to hold, that the mortgagor was in default whenever he permitted either of the installments to remain unpaid, after its maturity. His promise was to pay in installments, and he agreed, if he failed " to pay the said described promissory notes as they fall due, with the interest thereon," then the said Presley was authorized to take possession, advertise, and sell. Whenever he failed to pay one of these notes, at its maturity, he committed a breach of the contract, and put it out of his power " to pay the said described promissory notes as they fall due." The rule would have been different, if the power to take possession and sell had been made to depend on his failure to pay *all* of the notes. But the failure to pay one of the notes does not make the others due. The present mortgage contains no power to sell from time to time, as the installments mature, or to make more than one sale. Nor does it appear whether the lands are susceptible of division, so as to sell them in different lots, without impairment of the marketable quality of the premises. In such cases, it becomes our duty to inquire, whether, under a mortgage like the present one, the mortgagor can sell the whole premises ; and if so, how shall the sale be conducted.

The case of *Cox v. Wheeler*, 7 Paige, 248, arose on a mortgage to secure a debt payable in installments, with power of sale on default, but without any stipulation that, on default as to one installment, all should become due, and without au-

thority to sell oftener than once, as the several installments might mature. The first installment became due, and the mortgagee advertisd the entire premises, and sold, subject to the later installments afterwards to fall due. The premises yielded a sum greater than the amount then due. The mortgagor brought suit for this surplus, and the mortgagee defended, and sought to retain the money to meet installments to mature subsequently. It was ruled that, selling as he did the entire property, subject to the non-matured installments, the result was to leave such installments a charge on the lands, by virtue of the terms of sale; but the mortgage was cancelled and destroyed, and the mortgagor entitled to the surplus proceeds of sale. In delivering his opinion, Denio, V. C., said: "Upon the non-payment of an installment due upon a mortgage containing a power of sale, the mortgage strictly becomes forfeited, and the mortgagee may foreclose the defendant's equity, and subject the premises to a sale in this court, or may procure a sale by advertisement under the statute. If he pursues the latter course, the premises are sold to satisfy the money which is secured by the mortgage; and if there is any surplus beyond the installments which have become payable, the mortgagee retains it to pay the remainder of the mortgage debt; and it is only the surplus, after the whole debt is paid, which is to be rendered to the mortgagor, or his representatives. * * Any default in the condition of a mortgage is sufficient to authorize this proceeding, where the power of sale, as in this case, declares that the sale may take place for any default. * * * The whole premises must necessarily be sold, and the whole debt, whether then payable, or thereafter to become payable, must be paid to the holder of the mortgage. * * The effect of foreclosing a mortgage, before the whole debt has become due, must frequently be to subject the debtor to have the property applied to the payment of a debt which is not wholly due; and this is equally so where the foreclosure takes place in this court, except that, in the latter case, there may be a sale in parcels, where it can be done without injury to the interest of the parties. * * By the auction sale of these premises which was actually proposed by the advertisement, the bidders were to declare what sum they would pay down for the mortgaged premises, and to take them charged with the remaining installments and interest, to be paid by the purchaser at the period fixed for their payment in the mortgage; and this must be presumed to have been understood by the bidders. By bidding $800, the complainant declared his assent to take the premises for an aggregate amount equal to the installment added to the $800."

[ McLean v. Presley's Adm'r.]

This case went before the chancellor, Walworth, who, among other things said: "The mortgagee had the right to sell the premises, discharged of the lien of the future installment, and to retain the amount of such installment out of the purchase-money, if there was any surplus beyond the amount which had then become due, and the costs of the statute-foreclosure." But, sold as these premises were, subject to the future installment, he agreed with the vice-chancellor, that the surplus could not be withheld to meet such future installment. Several other decisions assert the same doctrine, as to the right to sell the entire premises in payment of all installments, whether due or not due, under a mortgage containing a power of sale like the present, (*Holden v. Gilbert*, 7 Paige, 208; *Jencks v. Alexander*, 11 Paige, 619; *Barber v. Cary*, 11 Barbour, 549; *Bunce v. Reed*, 16 Barb. 347); and the elementary books assert the same doctrine.—1 Hill. on Mort. 129, 130; Thomas on Mort. 412.

If it be contended that the foreclosure in the case of *Cox v. Wheeler, supra,* was under a statute of New York, the answer is, that the statute made no provision, and exerted no influence in the decision of the question we have been discussing. The right to sell the whole mortgaged property, and to retain for after-maturing installments, was put on general principles, uninfluenced by the statute.—See 3 Rev. Stat. 5th ed., 859 to 862.

It follows from what we have said above, that when default was made in the non-payment of one of the installments, the mortgagee had power to sell the entire premises; and if any surplus of proceeds was left, after satisfying the installments then due, the mortgagee had the right to retain, of such surplus, a sum sufficient to meet and liquidate the after-maturing installments.

Having foreclosed his mortgage, by sale, in 1874, Presley's bill, as a bill to foreclose, is without equity.— *Williams v. Hatch*, 38 Ala. 338. So far as the averments of the present bill disclose, and so far as the proof shows the facts, Presley, when he filed his bill, had a legal title to the lands, and he could have maintained an action at law for their recovery. If he had brought such action, on his averment that McLean was and is insolvent, we will not say he could not, in some cases, have had a receiver appointed, on a bill properly framed, in aid of such ejectment suit.—See High on Receivers, §§ 11, 12 *et seq.;* but see also § 555. We need not, and do not decide this question in this case. The bill alleges, that Jones purchased at the sale for Presley, the mortgagee and seller, and that, pursuant to such previous understanding, he re-conveyed to Presley. If this be so, McLean, on

timely application, has the right to have the sale set aside, and a re-sale made. All such sales are regarded with suspicion.—*Hitchcock v. U. S. Bank*, 7 Ala. 386; *Littell v. Zuntz*, 2 Ala. 256; *Cunningham v. Rogers*, 14 Ala. 147; *Calloway v. Gilmer*, 30 Ala. 354. A purchaser, thus circumstanced, may come into equity, to have the uncertainty of his title resolved, by a confirmation of the sale, if agreeable to the mortgagor, or by a re-sale, if so ordered by the chancellor. This is the only phase of the present bill which contains any equity; and, in such suit, there is no authority to appoint a receiver.

The complainant, not being in possession, the suit can not be maintained as a mere bill to remove a cloud from the title.

The decree of the chancellor, in the appointment of the receiver, and in the foreclosure of the mortgage, is reversed, and the cause remanded.