# Mewburn's Heirs *v.* Bass.

*Bill in Equity for Redemption, by Heirs of Deceased Mortgagor.*

1. *Sale of lands under power in mortgage; on what grounds heirs or mortgagor may impeach.*—A sale of lands under a mortgage, in strict compliance with the terms of the power, cuts off the equity of redemption, and reduces it to a mere statutory right, which must be asserted on the conditions prescribed (Code, §§ 2877-80), even though no conveyance is executed to the purchaser; if no sufficient memorandum of the sale was made to meet the requirements of the statute of frauds (*Ib.* § 2121), neither the mortgagor nor his heirs can take any advantage of its insufficiency, so long as the mortgagee and the purchaser recognize the sale as valid and binding; nor can they complain that credit was extended to the purchaser, while the mortgage required a sale for cash.

2. *Same; limitation of suit for redemption.*—The exception in favor of infants, contained in the statute of limitations (Code, § 3236), has no application to a suit in equity by the heirs of a deceased mortgagor, either to set aside a sale under the power, or to enforce the statutory right of redemption; nor can a court of equity engraft such an exception on the provisions of the statute allowing a redemption.

APPEAL from the Chancery Court of Jefferson.

Heard before the Hon. THOMAS COBBS.

The original bill in this case was filed on the 16th July, 1883, by Ella Mewburn and others, children and heirs at law of James R. Mewburn, deceased, against W. J. Bass as the administrator of the estate of Richard Hudson, deceased, John A. McIntosh, and several other persons; and sought an account and redemption under a mortgage of a tract of land, which said James R. Mewburn in his life-time had executed to said Hudson. The mortgage was dated the 8th September, 1866, was signed by said Mewburn and wife, and conveyed a tract of land containing about eighty acres. At a sale, or attempted sale, under a power contained in this mortgage, on the 4th May, 1868, said McIntosh became the purchaser, and was placed in possession of the land; and he sold and conveyed to the other defendants a few weeks before the bill was filed. By amendment of the bill, after demurrers sustained, the names of all the complainants except the two youngest were stricken out. On final

[Mewburn's Heirs v. Bass.]

hearing, on pleadings and proof, the chancellor dismissed the bill, and his decree is now assigned as error. The opinion states all the material facts.

Jno. T. Heflin, and R. H. Sterrett, for appellants.—The equitable right of redemption can only be destroyed by a valid and complete foreclosure, or barred by the statute of limitations, lapse of time by analogy to the statute, or conduct on the part of the *mortgagor amounting to an estoppel. 3 Pomeroy's Equity, 206, § 1219. Here, there never was any foreclosure. There was a verbal agreement between Hudson and McIntosh, as to the terms of a sale ; but it was never carried into execution. The attempt to sell under the mortgage seems to have been abandoned, and ·there is no connection between it and the subsequent conveyance executed by Hudson as administrator of Hawkins, which is void as to the heirs of Mewburn. That a bill to redeem by an infant may be filed within three years after. attaining his majority, without regard to the time elapsed since the sale, see *Glover v. Hill,* at the last term. *

James Weatherly, and J. J. Garrett, *contra.*—On the death of James R. Mewburn, the right of redemption descended to all of his heirs jointly, and could only be asserted by all of them jointly ; and some of them being barred by the statute of limitations, all are barred.—*Hunt's Heirs v. Ellison,* 32 Ala. 173, 189 ; *Hardeman v. Sims,* 3 Ala. 751. A sale under the power in a mortgage cuts off the equity of redemption as effectually as a decree of foreclosure, and leaves in the mortgagor, or his heirs, nothing but the statutory right of redemption, which must be asserted within two years.—*Cooper v. Hornsby,* 71 Ala. 62 ; *Harris v. Miller,* 71 Ala. 26.; *Bailey v. Timberlake,* 74 Ala. 221 ; *Comer v. Sheehan,* 74 Ala. 452.

STONE, C. J.—The appellants, who are complainants in this cause, are the youngest two of five children, left surviving him by James R. Mewburn, who died intestate, December 30, 1867. When this bill was filed, July 16, 1883, Mrs. Hardman, the elder of the two compainants, had just passed her twenty-first year. Ella Mewburn · was then a minor. The older three children were each more than twenty-four years old ; that is, each had passed his and her twenty-first year by more than three years. William Mew-'

---

*This case was published in the *Southern Law Times*, but was never officially reported, the opinion having been withdrawn by the court.
                                                            Rep.

burn, the oldest of the five children, had died in 1879, being than more than twenty-four years old. He left no descendants.

In October, 1865, James R. Mewburn borrowed from Richard Hudson three hundred dollars, and gave his note to repay it, with interest, January 1, 1867. In September, 1866, he, Mewburn, executed a mortgage, in which his wife united, conveying to Hudson eighty acres of land, describing it, to secure the payment of said note. The mortgage contained a power of sale on default, and stipulated that, on giving certain specified notice, Hudson should sell the said lands to the highest bidder for cash, and thus pay off the note and its interest. This mortgage was recorded, after being duly acknowledged and certified as to its execution by the husband, and duly proved as to execution by the wife, and certified in form to convey the homestead.

The testimony in the record proves, without conflict, that, after giving notice in the manner required by the mortgage, Hudson, the mortgagee, sold said eighty acres of land, to the highest bidder, at the place, and within the hours prescribed in the conveyance; that fifty or more persons were present; that John A. McIntosh was the highest bidder, at four hundred and twenty-five dollars, and the land was knocked down to him at that price. This sale was made in May, 1868. There is no ground for questioning the regularity of the proceedings up to this point. In fact, there is no conflict in the testimony on any point raised by the record.

When McIntosh purchased, he did not pay the entire purchase-money in cash, although he testifies that nothing was said about credit or indulgence until after he was proclaimed the highest bidder and purchaser. There was then an agreement between Hudson and himself, that, as to the mortgage debt due to Hudson, he should have indulgence. He, McIntosh, paid the entire overplus, above the mortgage debt, in cash, and was let into immediate possession, alike by Hudson, the mortgagee, and the widow and heirs of the mortgagor. He has remained in undisturbed possession ever since, exercising acts of ownership, and claiming to hold in independent right, until he sold a part of the property to his co-defendants in this suit, only a very short time before the present bill was filed.

In September, 1869, McIntosh paid Hudson the entire amount of the mortgage debt and interest, and the latter then made a conveyance to the former. The deed, however, is by "Hudson, administrator of the estate of James

A. Hawkins, deceased," and the granting clause is as follows:
"All the right, title, and interest in said lands, the said R.
Hudson as such adminstrator had in said lands." Neither
the deed, nor any thing else found in the record, informs us
what interest Hudson, as administrator of James A. Hawk-
ins, had in the lands. The mortgage conveyed the lands
to Richard Hudson, and all the interest McIntosh acquired
came to him as purchaser at a sale made under that
mortgage. There is nothing in the record to connect the
conveyance made by Hudson, with the mortgage, the power
of sale, or the sale actually made by Hudson to McIntosh,
but much to disconnect them. We hold that the deed made
by Hudson did not devest the legal title out of him.

It is contended for appellants, that in making sale under
the mortgage, Hudson made no note or memorandum in
writing of the sale, sufficient to take it out of the operation
of the statute of frauds. That may be conceded, without
affecting the result of this case. This is not a contest
between Hudson and McIntosh, as to whether the sale is
binding. McIntosh claims under his purchase, and seeks
to confirm it; while Hudson's heirs set up no claim to the
land, but admit McIntosh's rightful claim. The statute of
frauds is a personal defense, which can only be made by
the vendor or purchaser, or those standing in their right.
*Gordon v. Tweedy*, 71 Ala. 203, 213; *Meyer v. Mitchell*, 75
Ala. 475, 480; *Lewis v. Wells*, 50 Ala. 198; *Lavender v. Hall*,
60 Ala. 214. If necessary to the determination of this
question, it may be that Hudson could not himself have
made this defense, after receiving part or all of the purchase-
money, and allowing the purchaser to take and retain pos-
session under his purchase.—Code of 1876, § 2121, sub-d. 5;
*Houston v. Hilton*, 67 Ala. 374.

It is objected further, that the mortgage required a sale
for cash, and Hudson allowed McIntosh considerable time
within which to pay, thus making it a sale on credit. There
is nothing in this objection.—*Mahon v. Williams*, 39 Ala.
202; *Cooper v. Hornsby*, 71 Ala. 62; *Markly v. Langley*, 92
U. S. 142.

The question before us, then, is reduced to this: The
lands described in the mortgage were sold under the power
therein contained, in strict compliance with the terms of the
mortgage; McIntosh was the highest bidder, and became the
purchaser; he took immediate possession under his pur-
chase, paid the entire purchase money, and remained in
possession, holding in independent right, until the present
suit was brought, near fifteen years afterwards. He re-
ceived no conveyance, or title deed; for the paper executed

40

was so framed as not to convey the title which the mortgage had vested in Hudson. McIntosh, then, had a perfect equity, coupled with a possession of near fourteen years, perfected by complete payment of the purchase-money made in September, 1869. Is the present bill to redeem filed in time?

The right to redeem is not always governed by the same rules. A mortgagor, out of possession, has the right to redeem from the mortgagee in possession, the mortgage not being foreclosed, at any time until the statutory bar gives repose to the latter. The bar in relation to real estate is ten years.—Code of 1876, § 3225.

There is an exception to the operation of this statutory rule, when the person having the right of action was, at the time the right accrued, laboring under the disability of minority, coverture, insanity, etc. Such persons have three years after the termination of such disability to bring suit, or make entry or defense.—Code of 1876, § 3236; *Riggs v. Fuller*, 54 Ala. 141; *Taylor v. Forney*, 56 Ala. 426; *Taylce v. Dugger*, 66 Ala. 444. This exception, however, operates only on limitations provided for in chapter 20, title 1, Part 3, of the Code of 1876, commencing with section 3223, and ending with section 3251.

There is, also, a statutory right of redemption, secured by other provisions of the Code, beginning with section 2877, which declares that, "Where real estate, or any interest therein, is sold under execution, or by virtue of any decree in chancery, or any deed of trust, or power of sale in a mortgage, the same may be redeemed by the debtor from the purchaser, or his vendee, within two years thereafter," prescribing the mode. This is purely a statutory right, and, to reap its benefits, it must be claimed within the two years. The three years exception in favor of minors, etc., has no application to this statutory exemption.—*Carlin v. Jones*, 55 Ala. 624; *Searcy v. Oates*, 68 Ala. 111; *Otis v. McMillan*, 70 Ala. 47; *Bailey v. Timberlake*, 74 Ala. 221; *Parmer v. Parmer, Ib.* 285; *Caldwell v. Smith*, 77 Ala. 157; *Seals v. Pheiffer, Ib.* 278; *Holden v. Rison, Ib.* 515. The steps preliminary to the right of redemption under this statute, are very different from those required of mortgagors who seek to avail themselves of the long-known equitable right of redemption, on paying off the incumbrance.

In addition to the foregoing well-defined classes, other redemptions have been allowed, where there has been an attempt made to foreclose, but some irregularity, or incompleteness, or violation of equitable principles, is complained of. These cases generally arise when the foreclosure is

[Mewburn's Heirs v. Bass.]

attempted under a power of sale conferred, and without obtaining any judicial decree authorizing a sale. All the authorities agree, that when the sale is made under the power granted in the mortgage, and there is a compliance with the directions and requirements prescribed for conducting the sale, the foreclosure is as effective as if had been accomplished through a chancery decree. A sale thus made cuts off the equitable right of redemption, and reduces the mortgagor to the mere statutory right, to be asserted within two years after the sale.

Cases of redemption, claimed on account of alleged irregular foreclosure, are most frequently based on the charge, that the mortgagee, in making the sale, has perpetrated some fraud, to the injury of the mortgagor, or that he has himself become the purchaser, either directly or indirectly, without any authority therefor conferred by the mortgage.

The case of *Cooper v. Hornsby*, 71 Ala. 62, is, according to our understanding, precisely like the one before us, in every respect save one, to be hereinafter noticed. In that case, as in this, the mortgage contained a power of sale; the sale was made under it; a stranger to the mortgage purchased, and paid the purchase-money, and possession was taken under the purchase, but no conveyance was made. Speaking of the effect of the sale in that case, we said: "It is true that no deeds were executed between the parties, but this was material only as affecting the legal title to the lands in question, which could be devested only by the execution and delivery of a conveyance in writing. . . The purchase by Golden, however, gave him a right to compel the mortgagee, by specific performance, to convey to him. Whether he settled the purchase-money in lawful currency, or by a debt due him from the mortgagee, was a matter resting exclusively with them, and with which the mortgagor, Cooper, had no concern. Nor could third parties complain that these transactions were void under the statute of frauds, because not evidenced by writing. . . The sale made under the power by Hornsby to Golden, being obligatory on the parties, and valid so long as they treated it as a binding agreement, it operated to cut off the equity of redemption of the mortgagor, Cooper, and reduced it to a mere statutory right of redemption. This could be asserted at any time within two years from the date of the sale." In another place it had been said, "The offer to redeem by the debtor, whether made by bill or otherwise, must come within two years from the date of sale. This is under the provisions of the statute, as found in section 2877 of the present Code."

This case settled the following propositions :

*Fi st.* If a sale under a power in a mortgage is regular, even though no conveyance is made, it cuts off the equity of redemption, and reduces it to a mere statutory right.

*Second.* If there be no writing signed to take the contract without the statute of frauds, only the mortgagee and purchaser can take advantage of the omission.

*Third.* The payment of the purchase-money is a matter between the mortgagee and purchaser, which they can arrange to suit themselves. The mortgagor has no other interest, than that he obtain credit and benefit of the amount bid.

In *Harris v. Miller,* 71 Ala. 26, it was said : "A sale under a power in a mortgage, fairly made, operates as a strict foreclosure by a decree of a court of equity—it cuts off and bars the equity of redemption." So, in *Bailey v. Timberlake,* 74 Ala. 221, it was said : "The sale as effectually cut off and barred the equity of redemption—the only estate or interest in the lands residing in the debtor—as a decree of strict foreclosure would have done."

In the case of *Comer v. Sheehan,* 74 Ala. 452, a mortgagee had sold under a power of sale contained in the mortgage, and had himself become the purchaser. This court said : "We are of opinion, that one who purchases as mortgagee at his own sale, comes within the benefit designed to be secured by this statute [Code, 1876, § 2878, statutory redemption], although no deed, or other written memorandum of the sale, is made at the time, so as to rescue the transaction from the influence of the statute of frauds. The case of *Cooper v. Hornsby,* 71 Ala. 62, decides that such a sale is valid, as against third parties, on collateral assailment ; not being stictly void, but voidable merely by interposition of the statute, which is considered as waived, unless specially pleaded by one having the right to set up the defense. The sale therefore is binding, so long as the parties do not object to its validity, as it would operate to cut off the equity of redemption of the mortgagor, and reduce it to a mere statutory right of redemption."—*Robinson v. Cullom,* 41 Ala. 693; *Hawkins v. Hudson,* 45 Ala. 482 ; *Childress v. Monette,* 54 Ala. 317 ; *McGuire v. Van Pelt,* 55 Ala. 244 ; *McLean v. Presley,* 56 Ala. 211 ; *Lehman v. Shook,* 69 Ala. 486; *Otis v. McMillan,* 70 Ala. 46.

We said above that there was a single difference between the facts in the case of *Cooper v. Hornsby,* 71 Ala. 62, and the facts of the present case. In that case, the party seeking to redeem was an adult when the right accrued. In this, they were infants. Does this make a difference?

[Mewburn's Heirs v. Bass.]

We have shown that section 3236 of the Code of 1876, which allows suits to be brought within three years after the removal of certain disabilities, does not extend to the statutory right of redemption under sections 2877 *et seq.* Has the statute an equitable operation beyond its letter, and does statutory redemption fall within that equity? We think not, for the following reasons:

- *First.* By the very letter of the exception, it is made applicable to limitations provided for in the chapter in which it is found. Neither statutory redemption, nor the limit prescribed in which it may be exercised, is found in that chapter. *Expressum facit cessare tacitum.*

*Second.* Exceptions to the operation of statutes of limitation must be expressed; and if not expressed, have no operation even in favor of persons not *sui juris.*—*Howell v. Hair,* 15 Ala. 194; *Harwell v. Steele,* 17 Ala. 372; *Beckford v. Wade,* 17 Ves. 87; *Wells v. Child,* 12 Allen, 333; *Favorite v. Booker,* 17 Ohio St. 548.

*Third.* The statutory right of redemption is in no sense a statute of limitations. It is a mere boon or privilege offered, by accepting which, in the terms offered, the debtor, or certain classes of his creditors, may acquire title to property, which otherwise had passed from their reach. The boon is lost, if not accepted within the time offered, and on the conditions prescribed.—*Reynolds v. Baker,* 5 Cold. (Tenn.) 221; *Otis v. McMillan,* 70 Ala. 46; *Bailey v. Timberlake,* 74 Ala. 221.

*Fourth.* The stern logic of the situation forbids that we should apply the three years extension after disabilities removed to this mere statutory right of redemption. Every one knows that, so long as this right exists, the possibility of its assertion impairs the marketable quality of the title, and leaves the purchaser in that state of uncertainty as to the duration of his ownership and dominion, that he would hesitate before making valuable and lasting improvements. It can not be supposed the legislature intended to make it possible that purchasers, in any of the classes named, could be placed under such a cloud, which might overshadow them for any period short of twenty years.

It is possible we might have pretermitted the point last discussed. We have shown by our own numerous decisions that the equitable right of redemption as a mortgagor, left in Mewburn and his heirs, was cut off by the sale which Hudson made. There remained, therefore, nothing but the statutory right of redemption. The bill, in this case, is fatally defective and imperfect in many respects, as a bill to redeem under the statute. Not to mention other imperfec-

[Mewburn's Heirs v. Bass.]

tions, there is no tender nor offer to pay the purchase-money, ten per cent. damages, and other lawful charges, which the statute imposes as a condition of redemption. Code of 1876, § 2879; *Alexander v. Caldwell*, 61 Ala. 543; *Searcy v. Oates*, 68 Ala. 111. The chancellor dismissed the bill, and nothing remains to us but to affirm his ruling.

The decree of the chancellor is affirmed.

CLOPTON, J., not sitting.