[Gernert v. Limbach.]


# Gernert *v.* Limbach.

## *Detinue.*

(Decided Nov. 18, 1909.   50 South. 903.)

1. *Statutes; Construction; Abiguous Terms.*—A word or phrase recurring in an instrument, statute or constitution is often given a presumptive meaning by giving it, when used in an ambiguous sense, the same meaning it had previously in the instrument, statute or constitution; but this presumption is conditioned on the absence of the appearance of a contrary intent.

2. *Mortgages; Construction; Time of Maturity.*—The mortgage under consideration in this case was examined and under its terms, it is held that a foreclosure was proper upon default in the payment of either of the notes secured thereby.

APPEAL from Marengo Circuit Court.

Heard before Hon. JOHN T. LACKLAND.

Detinue by Fred Gernert against L. Limbach. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

The mortgage was as follows: "State of Alabama, Marengo County. Know all men by these presents, that I, F. Limbach, am justly indebted to Fred Gernert in the sum of $1,457.16, as is evidenced by my two promissory notes, bearing even date with this instrument and payable, respectively, on the 11th day of June, 1905 and 1906, at the First National Bank of Linden, Alabama, with interest from date, and the payment of which note I am anxious and willing to secure. Now, therefore, in consideration of the premises, and to secure the punctual payments of each of the notes above described according to the tenor and effect thereof, I, F. Limbach (here follows description of the property and habendum clause), upon condition, however, that if I pay each of the notes above described promptly at its maturity, then and in that event this conveyance is to be void; but in

the event that I fail to pay each of the said notes when due, then and in that event the said Fred Gernert is hereby authorized and empowered to enter upon and take possession of the above-described property, and after having given notice for three successive weeks of the time, place, and terms of the sale, by publication once a week for three successive weeks in some newspaper in Marengo county, to sell the said property in front of the courthouse door in Linden, Alabama, to the highest bidder for cash at public auction. The proceeds of said sale to be applied as follows: (1) To the payment and costs of expenditure necessary and incident to said sale, including a reasonable attorney's fee for conducting the same. (2) The amount with all accrued interest that may then be due upon said note. (3) The surplus, if any, to be returned to the undersigned or his legal representative."

WILLIAM CUNNINGHAME, for appellant.—The court erred in excluding the mortgage as evidence upon the objection that it did not show a right of immediate possession in the plaintiff at the time of the commencement of the suit.—*Pressley ats. McLean,* 56 Ala. 211; *Johnson v. Buckhaults,* 77 Ala. 276; *Chambers v. Marks,* 93 Ala. 417; 2 Jones on Mortgages, Secs. 1176, 1459, 1777b; *Keith v. McLaughlin,* 105 Ala. 342; *Moody v. Atkins,* 40 So. Reporter, 305; *Ford v. Lewis,* 146 Ala. 190; Jones on Chattel Mortgages, (5th Ed.) Sections 426, 766-8; 7 Cyc. of Law and Procedure, p. 94; *Leland v. Collver,* 34 Michigan, 418. The court erred in overruling plaintiff's demurrer to rejoinders of defendant, numbered 1 and 2, to plaintiff's replication.—*Gardner v. Newman,* 135 Ala. 522; *Henry v. Porter,* 29 Ala. 619; 3 Pldg. Prac., page 148; Code of 1907, Secs. 5338 and 5339; *Hightower et al. v. Ogletree,* 114 Ala. 94; *Bridges*

[Gernert v. Limbach.]

*v. Tenn. C. I. & R. Co.,* 109 Ala. 287; *Highland Ave. &
B. R. Co. v. South.,* 112 Ala. 642; 18 Pldg. & Prac., page
80; *Edmundson v. Wilson,* 108 Ala. 118; *Brewer v. Bain,*
60 Ala. 159.

I. I. CANTERBURY, and DEGRAFFENRIED & EVINS, for
appellee.—The whole of the mortgage indebtedness was
not due until the maturity of the last note, and the
mortgage could not be foreclosed until that time.—
*Seiler v. Pate,* 67 N. E. 448; *Beck, et al. v. Evansville
Brewing Co.,* 58 N. E. 859; *Bartlett v. Houdlett,* 147
Mass. 25; *Adams Ex. Co. v. Lexington,* 83 Ky. 657;
*Porter v. Berthelett,* 20 Fed. 240; *Gibson v. Keuffer,*
77 Pac. 282. The court properly excluded the mort-
gage.—*Stewarts' Case,* 106 Ala. 219; *Cooper's Case,* 73
Ala. 252. The exercise of the power of foreclosure was
deferred until the maturity of the entire debt and its
exercise prior thereto was void.—*Keith's Case,* 105 Ala.
339.

McCLELLAN, J.—Detinue by a mortgagee to recov-
er property described therein. The plaintiff's right to
recover was rested upon his mortgage. The court, on
objection, declined to permit the introduction of the
mortgage upon the ground that its law day had not
arrived, notwithstanding default in the payment of one
of the two notes falling due at different dates had pre-
viously occurred, when action was commenced, and in
consequence that under the terms of the mortgage the
plaintiff had not the right to the immediate possession
of the property at the time he instituted the action. This
ruling was, of course, vital, and a nonsuit, with bill of
exception, was taken. The reporter will set out the
mortgage, omitting the description of the property and
the habendum clause just preceding the condition in the
instrument.

The parties had the right to conform their contract, in this particular as they chose. They could condition their respective rights to the possession of the property upon any one of the possible contingencies arising out of the payment, or default therein, of the two notes. It is the province of the court to ascertain their intention in the premises, and in so doing due weight and influence must be given the sound rule, announced in *Johnson v. Buckhaults,* 77 Ala. 276, that equivocal and ambiguous terms should be construed most strongly against the mortgagor. Much of the argument of counsel for both parties is devoted to the discussion of the meaning of the word "each," where it last occurs in the instrument. It may be conceded that the respective contentions of counsel, as to the abstract meaning of "each," find support in adjudications elsewhere.—3 Words & Phrases, p. 2299 et seq. The question here cannot depend in decision upon the abstract meaning of that word. In this instance, as always, the whole instrument must be taken into account in the ascertainment of the intent of the parties thereto; and, unless entirely unavoidable, every clause and provision of it must be given effect—an operation. The context is often, as it is here, a sure element of aid in determining with what meaning and intent even an ambiguous word was used by the parties. What a word means in one connection does not, of course, invariably indicate that a like meaning was intended to be taken from it in another. True, a word, recurring in an instrument, statute, or Constitution, is often given a presumptive meaning by the application of the familiar rule of according to the word, or phrase, when used in an equivocal or ambiguous sense, the meaning that appears previously, in the instrument, statute, or Constitution, to have been its definite and certain meaning.—*State ex. rel. Woodward v. Skeggs,*

154 Ala. 249, 257, 46 South. 268. But this is a presumption merely, and is conditioned upon the absence of the appearance of a contrary intent.

"*Each*" occurs three times in this mortgage, viz.: First, where it is recited that the consideration, in part was "to secure the punctual payment of *each* of the notes above described *according to the tenor and effect thereof*"; second, stating the *condition*, "if I pay *each* of the notes above described promptly at its maturity, then and in that event this conveyance is to be void;" and, third, "But in the event I fail to pay *each* of the said notes *when due*, then and in that event" the mortgagee was empowered to assume possession, or, conversely, the right of the mortgagor to the possession should cease. (Capitals and italics supplied.) As *first* employed, *each* was, obviously, intended to refer to both of the notes. The whole instrument shows it to have been the purpose to give and take, respectively, security for the whole debt evidenced by the two notes. But it is, also, just as evident that the security was intended, taken, and given to assure the "punctual payment" of the notes "according to the tenor and effect thereof"— namely, among other things, when they, respectively, matured. That is too clear for doubt. Accordingly, as *first* used, the word must be taken as qualified by the quoted sentence, and cannot without distorting the language, be interpreted as fixing a different period of maturity for the notes or of expressing any other purpose and intent than as assuring the punctual payment of both notes, when they, respectively, fell due. As next employed, the word is indissolubly associated and connected with a provision, in form of a condition, for avoiding the conveyance if prompt payment of the notes was made at "its" maturity. Hardly could this idea have been more plainly expressed than

27—163

it is expressed in the second use of "each": "If I pay
the notes as and when each one of them falls due, this
conveyance shall be void." Under this feature of the in-
strument prompt payment of both of the notes at ma-
turity was *the* assurance, and a failure to pay them as
and when each one of them fell due avoided the nullify-
ing of the instrument's effect. So, when we come to the
construction of the *third* use of the word *"each,"* we have
a mortgage given to assure the "prompt," "punctual"
payment of two notes on the dates of their respective ma-
turing, and a condition therein that in order to avoid
the instrument both notes must be paid as and when
they respectively fell due. Accordingly, to this point
the contract of the parties would be breached if any one
of the notes was not paid promptly, punctually, upon
maturity. Promptness, punctuality, and that as ex-
pressly referred to the respective dates of maturity of
the notes, was of such importance, in the minds of the
parties, that in one instance it was recited as of the mo-
tive for the instrument, and in another it was made a
feature of the condition upon which hinged the avoid-
ance of the effect of the mortgage. Following such a
status of intent, common of course to mortgagor and
mortgagee, they came to formulate the conditions un-
der which the security, as recited and declared, should
be available to the mortgagee. Two things, in the main,
were thought necessary or desirable to this end, viz.,
possession, and a sale, by the mortgagee of the property
described in the mortgage. They set down the former,
evidently contemplated as immediately preceding the
latter, as when *each* note was not paid *when due.* Should
this be construed so as to postpone the right to posses-
sion, and to sell, until the last note has passed maturi-
ty and default in its payment was made? The opinion
is entertained that such was not the intent of the par-

ties.. If so it was, then the clearly expressed purpose to afford security for the prompt payment of the notes "according to the tenor and effect thereof" would be rendered wholly nugatory as to the first maturing note; for, if the security, as part of which forclosure, including possession, essentially was, was available only after the last note had matured and default made its quality to assure prompt, punctual payment of the first note when due would be entirely destroyed. In that event, though the necessity was to assure prompt payment when due, the mortgagor could delay 12 months without the mortgagee's having the power to enforce the payment which in plain language, the mortgagor had obligated his estate, and unmistakably declared his purpose, to assure on a day certain. If appellee's construction is adopted, conflicting provisions are created, or, at least, a provision of the instrument is denied force and effect. It is elementary that constructions so resulting should be avoided, if possible. Besides, as before indicated, the whole instrument abounds in indicia of a common purpose to secure and assure the prompt, punctual payment of the notes when they, respectively, matured; and, if the security be denied practical effect until a year after the date of maturity of the first note has passed, the value, the virtue, of the assured punctuality is destroyed. Furthermore, if the condition under consideration be that *both* notes shall meet default before possession could be taken, and the first was promptly paid, would not the condition be impossible of fulfillment, so as to authorize the mortgagee's assuming possession?. Of course, such a construction would not be tolerated, because it would defeat the security intended to assure the prompt payment of the last note, whereas such was within the declared purpose and intent of the parties. If this is true, by the same token the security

and assurance for the punctual payment of the first maturing note should not be *impaired* by a year's postponement. The perishable part of the property covered by the mortgage might become valueless in the year to intervene between default on the first note and the maturity of the second.

But it is urged for appellee that the second direction to the application of the proceeds of the sale bears out the intent that foreclosure, with its incidents, could not avail until after default in payment of the last note or until at least that date arrived. The second direction is not capable of that interpretation. The omission of a comma after the word *"amount"* made more easy the adoption, in argument, of the view and effect pressed for appellee. So punctuated, the meaning and effect of the direction is apparent. The expression, beginning with the words *"with all,"* has reference to interest and not to the amount of the notes aside from that incident to them. The word *"then"* emphasizes the correctness of this interpretation. Furthermore, the second direction re-inforces the argument that the intent was to foreclose for the entire debt, separated, doubtless for the convenience of the mortgagor, into two equal installments. If not so, it would not have been provided to include in the "amount" the "accrued interest that may then be due upon said notes." If the first note had been paid at maturity, that feature of the direction would be without effect, for there would then be only one note in arrears, whereas in this second direction the reference is to "said notes." We are aware, of course, that the employment of the singular, or of the plural, is not always final and, upon occasion, the one may be read in lieu of the other in arriving at the intent of the parties. We feel safe in taking the plural as it is written in this instance, where such an unmistakable intent to assure promptness in payments appears throughout the instrument.

[Gernert v. Limbach.]

Our conclusion in the premises finds support, we think, in substance, though not identical in point of fact, in the following adjudications here: *McLean v. Presley,* 56 Ala. 211; *Johnson v. Buckhaults,* 77 Ala. 276; *Moody v. Atkins,* 146 Ala. 684, 40 South. 305. *Keith v. McLaughlin,* 105 Ala. 342, 16 South. 866, is cited as opposed to the view entertained by us. The court there had under construction a mortgage, wherein, in the premises, the parties had fixed, in unambiguous terms, the law day of the mortgage as the "first day of October, 1882," the day of maturity of the second and last note. See *Ford v. Lewis,* 146 Ala. 190, 41 South. 144, where this distinguishing feature of *Keith v. McLaughlin* is noted. The court, hence, erred in the exclusion of the mortgage.

The other error assigned in predicated upon the overruling of plaintiff's demurrers to defendant's rejoinders to plaintiff's replications to pleas 3 and 4. These pleas proceed on the theory that default in payment of the first note did not operate to then mature the whole debt. We have held otherwise. In consequence, the pleas were faulty. If, of course, the first note was paid, by services, etc., upon or before maturity, a fact not appearing as the pleas now stand, then plaintiff's right to the possession did not exist when the suit was instituted. We mention these matters as indicating the necessity to recast on the next trial the defenses, and hence the pleadings following. It is, therefore, unnecessary to deal with the last assignment of error.

The judgment is reversed, and the cause is remanded, for the error before noted.

Reversed and remanded.

DOWDELL, C. J. and SIMPSON and MAYFIELD, JJ., concur.