8378

RHAME v. DuRANT.

CONSTITUTIONAL LAW—COUNTIES.—A county formed under the Constitution of 1895, after its formation is not an *old* county under section 4 of article VII of the Constitution, prohibiting an "old county" to be reduced to less than 500 square miles, but such county may be cut to 400 square miles by cutting a portion of its territory into another county.

Petition by John C. Rhame and James M. Smith against D. E. DuRant, J. P. Kilgore, T. S. DuBose and Stanyarne Burrows for injunction.

*Mr. B. Frank Kelly,* for petitioner.

*Messrs. Purdy & Bland,* contra.

The opinions in this case were filed on September 30, 1912, and the case was then ordered reargued before the Court *en banc* because there was involved a question of constitutional law on which the entire Court is not agreed. This order was revoked on November 30, 1912, on the ground that the Justices of this Court have reached the same conclusion as to the form of the judgment that should be rendered.

November 30, 1912.   The opinion of the Court was delivered by

MR. JUSTICE HYDRICK.   The petitioners seek to enjoin proceedings which have been commenced to cut off a part of Lee county and annex it to Sumter county.   Lee county was created in the year 1902, under the constitution of 1895, and statutes enacted in accordance with its provisions.   It contains 410½ square miles.   The territory which it is proposed to take from it contains nine square miles; therefore, over 400 square miles will be left in the county.

The question is whether this reduction of its area can be made without violating the Constitution. Sections 3, 4, 5 and 7 of article VII, which provides the manner in which new counties shall be established, and existing county lines altered, are pertinent to this inquiry. They read as follows:

Sec. 3. "No new county hereafter formed shall contain less than one one hundred and twenty-fourth part of the whole number of inhabitants of the State, nor shall it have less assessed taxable property than one and one-half millions of dollars, as shown by the last tax returns, nor shall it contain less area than four hundred square miles.

Sec. 4. "No old county shall be reduced to less area than five hundred square miles, to less assessed taxable property than two million dollars, nor to a smaller population than fifteen thousand inhabitants.

Sec. 5. "In the formation of new counties, no old county shall be cut within eight miles of its courthouse building.

Sec. 7. "The General Assembly shall have the power to alter county lines at any time: *Provided,* That before any existing county line is altered, the question shall be first submitted to the qualified electors of the territory proposed to be taken from one county and given to another, and shall have received two-thirds of the votes cast: *Provided, further,* That the change shall not reduce the county from which the territory is taken below the limits prescribed in sections 3, 4 and 5 of this article: *Provided,* That the proper proportion of the existing county indebtedness of the section so transferred shall be assumed by the county to which the territory is transferred."

The contention of the petitioners is rested solely upon this construction of the foregoing sections of the Constitution, to wit: that, as soon as a county is established, it becomes an old county, within the meaning of the Constitution, relatively to all counties thereafter created, and is entitled to the benefit of the limitations prescribed in sections 4 and 5 against the reduction of the area, wealth or

population of any old county in the ceation of new counties, or in changing existing county lines.

It is but stating a truism to say that "new" and "old" are relative terms. What is new today may be relatively old tomorrow, and, as compared to some particular things or events, it may be new a hundred years hence. The meaning which these words were intended to have in the Constitution must be determined by the context and the general rules of construction.

The strongest argument in support of the contention of the petitioners is found in section 7, which gives the legislature "power to alter county lines *at any time: Provided,* That before any *existing* county line is altered," the question shall be decided by a two-thirds vote of the people of the territory affected. The words italicized and the context show the intention that the word "existing" should have not only its ordinary meaning, in which it refers to things of the present time, but also a relatively future meaning, and refer to lines existing at any time in the future, when it should be attempted to alter them. Therefore, the lines of Lee county could not be changed without compliance with this provision, although they were not "existing" at the adoption of the Constitution. The second proviso also lends some support to that contention, in that it expressly makes the limitation of section 5, which, in terms, applies to old counties, applicable to all counties in the alteration of county lines, so that, in the formation of new counties, and in the alteration of county lines, no county, old or new, can be cut within eight miles of its courthouse. While there is force in this argument, we do not think it conclusive.

While the intention of the framers of the Constitution is somewhat obscured by a want of clearness in expression, and, perhaps, also, from oversight of and consequent failure to provide for the contingency presented by this case, yet, when we construe together the various provisions

of the Constitution upon this subject, the conclusion cannot be resisted that the framers of the Constitution used the words "old" and "new," in the sections above quoted, with reference to the limits of area, population and wealth of counties, relative to the time when they were speaking. At that time, and as to those matters, they contemplated only the then existing counties and counties thereafter to be created,—the one class they denominated old, the other new. Hence, in section 3, we find them saying, "No *new* county *hereafter* formed," etc., showing that they used the words "new county" and "county hereafter formed" synonymously. To say that no new county shall contain less than 400 square miles, and to prohibit the reduction of its area below 500 square miles is such an incongruity of thought and expression as to forbid the adoption of the application of section 4 to counties which may contain less than 500 square miles. While it is true that a new county may contain over 500 square miles, still, when sections 3 and 4 are read together, the conclusion is inevitable that section 4 was not intended to apply to those counties whose minimum area was fixed at 400 square miles.

The second proviso to section 7, that, in altering county lines, "the change shall not reduce the county from which the territory is taken below the limits prescribed in sections 3, 4 and 5 of this article," seems to be conclusive of the question. If the construction contended for by petitioners is correct, the inclusion of the limitations contained in section 3 in the proviso to section 7 was useless, because, in that event, there is nothing to which the limitations of section 3 can apply, and the application of the limitations of sections 4 and 5 alone would have better expressed the intention of the lawmakers. But we find the limitations of section 3 incorporated in the proviso, and we must conclude that they were intended to have some force and effect and apply to something. Furthermore, if the construction contended for by the petitioners is sound, the

word "old" in sections 4 and 5 is useless. But we find it there, and the rules of construction require us to give it some meaning, if possible; and we must presume that, without it, these sections would not have expressed the intention of the lawmakers. The express incorporation of the limitation of section 5, a section which previously related to the *formation* of new counties, in the second proviso of section 7, and making it applicable to the alteration of all county lines, notwithstanding the use of the word "old" in that section, is significant as showing at least the opinion of the framers of the Constitution that a section which referred only to "old counties" would not apply in the alteration of *any* county line, unless made to do so by express reference, which tends to show that they did not think of counties thereafter to be formed as "old counties."

It follows that the inhibitions of section 4 do not apply to Lee county, as that is not an "old county," within the meaning of the Constitution, with respect to the limitations therein mentioned, and that the inhibitions of sections 3 and 5 will not be violated by the proposed alteration of the county line.

The petition is therefore dismissed.

MESSRS. CHIEF JUSTICE GARY *and* JUSTICES WOODS *and* WATTS *concur in the result.*

MR. JUSTICE FRASER, *disqualified.*

MR. CHIEF JUSTICE GARY, *concurring.* This is an application to the Supreme Court, in the exercise of its original jurisdiction, for an order enjoining the respondents, from proceeding as commissioners appointed by the Governor, to change the boundary line between the counties of Sumter and Lee, so as to annex a portion of Lee county to the county of Sumter.

Lee county was created by an act of the legislature in 1902, and contains 410½ square miles. The territory which it is proposed to take from it, contains 9 square miles, which would still leave over 400 square miles.

The question for determination is, whether such reduction would violate the provisions of sections 3, 4, 5 and 7, art. VII of the Constitution, which are as follows:

Sec. 3: "No new county hereafter formed, shall contain less than one one hundred and twenty-fourth part, of the whole number of inhabitants of the State, nor shall it have less assessed taxable property, than one and one-half millions of dollars, as shown by the last tax returns, nor shall it contain less area than four hundred square miles.

Sec. 4. "No old county shall be reduced to less area, than five hundred square miles, to less assessed taxable property than two million dollars, nor to a smaller population, than fifteen thousand inhabitants.

Sec. 5. "In the formation of new counties, no old county shall be cut, within eight miles of its courthouse building.

Sec. 7. "The General Assembly shall have the power to alter county lines at any time: *Provided,* That before any existing county line is altered, the question shall be first submitted, to the qualified electors of the territory, proposed to be taken from one county, and given to another, and shall have received two-thirds of the votes cast: *Provided, further,* That the change shall not reduce the county, from which the territory is taken, below the limits prescribed in sections 3, 4 and 5 of this article: *Provided,* That the proper proportion of the existing county indebtedness, of the section so transferred, shall be assumed by the county, to which the territory is transferred."

It appears from the proceedings, of the constitutional convention, that section 7 was not a part of the resolution, proposing sections 3, 4 and 5, but was adopted as an amendment to them, after they had been agreed upon, by the convention.

That section was not intended to alter or amend, sections 3, 4 or 5, but to conform to the requirements of the Constitution, as to the area, wealth and population, either of an old or a new county,—the applicability of those sections to the particular case, being dependent upon the question, whether the proposed territory, is to be taken from a county in existence, when the constitution was adopted, or from a county thereafter created.

If the territory is taken from an old county, it must still possess all the requirements of the Constitution, to wit: Not less than five hundred square miles, two million dollars of taxable property, and fifteen thousand inhabitants; nor shall the new boundary line come within eight miles of its courthouse building. While, on the other hand, if the territory is taken from a new county, it must still contain, not less than four hundred square miles, one hundred and twenty-fourth part of the inhabitants of the State, and one and one-fourth millions of dollars of taxable property.

It will be observed, that the requirements in sections 3, 4 and 5, as to old and new counties, are different; and, it was in recognition of this fact, and in order to protect both classes of counties, that the convention did not use the words, "old county" or "new county," in section 7; for, if it had mentioned only one class, it would have rendered those sections inconsistent, and full force and effect could not be given to all their provisions.

If the convention had intended, that an existing line could not be changed, unless the county from which the territory was taken, still contained at least five hundred square miles, it would have expressed such intention, in far simpler language, and would not have made any reference to section 3, which requires only four hundred square miles.

The convention was composed of many of South Carolina's ablest lawyers, several of whom, were afterwards elected to judicial offices, and it is unreasonable to suppose,

that they did not clearly see the glaring inconsistencies, that would arise, unless sections 3, 4 and 5 should be construed, in the light of the distinction, between the requirements as to an old and a new county, especially as this is the only interpretation, by which full force and effect can be given, to all the provisions of those sections.

The trouble in this case, has arisen from the attempt, to make all the provisions of sections 3, 4 and 5 applicable to a single class of counties which is impossible, as they can not be harmonized.

For these reasons I concur.

MR. JUSTICE WOODS, *concurring.* I concur in the conclusion reached by Mr. Justice Hydrick that the petition for injunction should be dismissed, but am unable to agree to the construction of the Constitution indicated in his opinion. A petition having been presented for the changing of the boundary line between the counties of Sumter and Lee so as to annex a portion of Lee county to the county of Sumter, the Governor appointed the respondents, D. E. DuRant, J. P. Kilgore, T. S. DuBose, and Stanyarne Burrows, to investigate and report to him the facts as to area, population, etc., as provided by the act of 1911 (27 Stat. 43). Thereafter this proceeding was instituted to enjoin the respondents from proceeding, on the ground that Lee county, though created since the adoption of the Constitution, became immediately, on its formation, an "old county," within the meaning of the Constitution, and not having over five hundred square miles, its area cannot be reduced.

At the argument it was stated that whenever the question has arisen before the different Governors of the State, they have adopted the view that the expressions "old county" and "old counties," as used in the Constitution, embraced all counties in active existence, whether created before or after the adoption of the Constitution, and that the expres-

sions "new county" and "new counties" were limited in their meaning to counties in process of formation. It was further stated, that Governor Blease had appointed the commissioners with the view of having the matter settled by judicial construction.

The following are the portions of article VII of the Constitution bearing on the question:

Section 1. "The General Assembly may establish new counties in the following manner: Whenever one-third of the qualified electors within the area of each section of an old county proposed to be cut off to form a new county shall petition the Governor for the creation of a new county, setting forth the boundaries and showing compliance with the requirements of this article, the Governor shall order an election, within a reasonable time thereafter, by the qualified electors within the proposed area, in which election they shall vote 'yes' or 'no' upon the question of creating said new county; and at the same election the question of a name and a county seat for such county shall be submitted to the electors.

Sec. 3. "No new county hereafter formed shall contain less than one one hundred and twenty-fourth part of the whole number of inhabitants of the State, nor shall it have less assessed taxable property than one and one-half million of dollars as shown by the last tax returns, nor shall it contain less area than four hundred square miles.

Sec. 4. "No old county shall be reduced to less area than five hundred square miles, to less assessed taxable property than two million dollars, nor to a smaller population than fifteen thousand inhabitants.

Sec. 5. "In the formation of new counties no old county shall be cut within eight miles of its courthouse building.

Sec. 6. "All new counties hereafter formed shall bear a just apportionment of the valid indebtedness of the old county or counties from which they have been formed.

15—93

Sec. 7. "The General Assembly shall have the power to alter county lines at any time: *Provided,* That before any existing county line is altered the question shall be first submitted to the qualified electors of the territory proposed to be taken from one county and given to another, and shall have received two-thirds of the vote cast: *Provided, further,* That the change shall not reduce the county from which the territory is taken below the limits prescribed in sections 3, 4 and 5 of this article: *Provided,* That the proper proportion of the existing county indebtedness of the section so transferred shall be assumed by the county to which the territory is transferred."

The first section shows clearly that the convention meant by "old county," as used therein, any county which might be in existence at any time in the future when it should be proposed to take action under it looking to the formation of a new county, and by "new county" only those counties proposed and in process of formation under the law. It will be observed that here the provision is that the General Assembly may establish a new county only when the petition comes from certain electors of an "old county" within the area of the "old county" proposed to be cut. There is no provision nor warrant in the Constitution for a new county to be formed from a section of another new county, or by the petition of electors of a "new county." Hence it follows that if "old county" is restricted in its meaning to counties already in existence at the date of the adoption of the Constitution, there would be no authority in the Constitution for taking a part of any county formed since the adoption of the Constitution for the creation of a new county; and a county formed since 1895, whatever might be its wealth, area, population, and the need of its inhabitants, could never be divided, for the formation of a new county.

Section 3, in providing that "no new county hereafter formed," etc., and section 6, in providing that "all new

counties hereafter formed shall bear a just apportionment of the valid indebtedness of the old county or counties from which they have been formed," do not necessarily carry the meaning that counties thereafter formed should remain new counties after their formation, but only that new counties formed after the adoption of the Constitution should not, when formed, contain less than the specified population, taxable property, and area, and should bear a just proportion of the valid indebtedness of the old county or counties from which they were formed.

Section 5 confirms most strongly the meaning we have attributed to old county and new county in the construction of section 1. Clearly the intention of the section was to protect any county of the State actually in existence, whether formed before or after 1895, from having its territory cut within eight miles of its courthouse. But if "old county" in this section meant only a county in existence in 1895, then there would be nothing to prevent the line of a proposed new county being run to the courthouse door of any county formed since 1895.

From these considerations it seems clear that two of the first six sections of the article require the construction that in the formation of counties, "old county" and "old counties" should mean any county or counties formed or in existence at any time that proceedings might be instituted looking to the formation of a new county, and that the other four sections are not in anywise inconsistent with this construction.

It will be observed that these sections all relate to the formation of new counties and have no reference to the change of county lines. The journal of the convention shows that after these sections were agreed on, section 7 was proposed as an amendment. It has no reference to the formation of new counties, but relates to an entirely different subject from that covered by the first six sections, namely, the mere alteration of county lines by which territory would be trans-

ferred from one county to another. The words "new county" are nòt written in it, but, by its proviso, "That the change shall not reduce the county from which the territory is taken below the limits prescribed in sections 3, 4 and 5 of this article" means the same thing as if the words of the sections referred to had been set out in it. So this section distinctly enacts that with respect to the change of county lines there should be a difference between counties *"existing"* at the date of the adoption of the Constitution and those created after.

We think, therefore, it is reasonably clear that in providing for the *formation* of new counties from those already in existence, the convention meant by "old county" and "old counties" any county or counties in existence at the date when it should be proposed to form a new county, and by "new county" and "new counties" a county or counties proposed and in the process of formation; but that in the amendment providing merely for the *alteration of county* lines the intention was to divide the counties with respect to population, area, and taxable property into two classes, namely, counties *"existing"* at the date of the Constitution and those created after its adoption.

It is true that this construction is subject to the criticism that it gives to the words "new" and "old" different meanings in different sections of the same instrument, but that is not a cogent objection. The general presumption is that the meaning of a word used more than once in the same statute or constitutional provision is identical, but this presumption is by no means conclusive, and must yield to the intention appearing from consideration of the entire statute or the entire article of a Constitution. The presumption is manifestly weakened when it appears that the words are used, as here, in connection with different subjects. 36 Cyc. 1132; 26 Am. & Eng. Enc. 610; *Rhodes* v. *Weedy,* 46 Ohio 234; 15 Am. St. 584; *Jones* v. *DuBois,* 16 N. J. L. 293; *Sunset Tel. Co.* v. *Pasadena,* 118 Pac. 796; *Ryan* v. *State,*

92 N. E. 340; *State* v. *Knowles,* 90 Md. 654; 49 L. R. A. 695; 45 Atl. 877; *Gernert* v. *Limbach* (Ala.), 50 So. 903.

The presumption cannot have any force in this case where it is plain the constitutional convention could not have intended the unfair, not to say absurd, results which would flow from holding that section 7, in referring to old and new counties with respect to *alteration* of county lines, meant the same distinction between "old county" and "old counties" and "new county" and "new counties" as was clearly indicated in the preceding sections in providing for the formation of new counties.

On this reasoning I concur in the conclusion of Mr. Justice Hydrick that Lee county, having been created since the adoption of the Constitution of 1895, is a new county within the meaning of section 7 of article VII, providing for the alteration of county lines, and that it is not a valid objection to the proposed alteration of the county lines of Lee county that Lee county contain less than five hundred square miles. But I think that as soon as Lee county was created it became an "old county" within the meaning of the first six sections of the article providing for the formation of new counties, and that inasmuch as Lee county contains less than five hundred square miles it could not be reduced in acrea for the formation of a new county.

MR. JUSTICE WATTS *concurs.*